30441. PROGRESSIVE LIFE INSURANCE COMPANY *v.* SMITH.

DECIDED MAY 24, 1944.

*Craighead, Dwyer & Lavender, Carl B. Copeland,* for plaintiff in error.

*G. Seals Aiken,* contra.

GARDNER, J.  1. General grounds: As to the simple death benefit of $250, we are not here concerned except as to the penalty and attorney's fees, with which we will deal later, since this amount was tendered, as above stated.

On the night of March 14, 1943, about three-thirty or four o'clock a. m., the dwelling house of the insured was consumed by fire. No one was occupying the dwelling that night save the insured. His wife and children were spending the night away from home. The evidence is conflicting as to why his family was not there. The evidence for the plaintiff sustaining her contention was that they were merely visiting friends, while the evidence for the company sustaining its contention was that the insured had come home about nine o'clock under the influence of intoxicating liquors and had driven his family away. The evidence for the company was sufficient, if the jury had so found, to sustain the

contention of the company that the insured, from about five or six o'clock in the afternoon before the burning until about midnight or after of the same night, was drinking, and was under the influence of intoxicating liquors. But the evidence for the plaintiff is sufficient, in view of all the facts and circumstances of the case and the evidence produced, to sustain the conclusion that the insured was not under the influence of intoxicating liquors. We are duly considering the argument of able counsel for the company that as to the condition of the insured the evidence of the company is positive, whereas that of the plaintiff is negative. We have given this feature our best consideration and have reached the conclusion that although the evidence of the company, coming from what we consider respectable and unimpeached sources, strongly inclines one to the view of the company in this respect. But on the other hand, when we take into consideration the time of the fire, the evidence for the plaintiff, and all the circumstances which come within the peculiar province of the jury to decide, we are without authority to conclude, as a matter of law, that the evidence demanded a finding that at the time the house was consumed by fire, the insured was under the influence of intoxicating liquor within the meaning of the insurance policy to such an extent as to show a causal connection between his death and the fire which consumed the building. Then, too, in this connection we might call attention to the case of *Warrick* v. *State*, 125 *Ga.* 133, 142 (53 S. E. 1027), wherein the court said: "In weighing evidence, its character as to being positive or negative is one element for consideration, but it is not the only one. Credibility is also essentially involved. The section of the Code does not mean that the jury is bound to believe the positive evidence of one whose credibility is little or nothing, or who may have been successfully impeached or shown to be a perjuror, in preference to the evidence of many honest, upright witnesses of unquestionable credibility who had equal opportunity of observation, though their testimony may be negative. The rule does not mean that a witness must be credited, regardless of anything else, if he swears positively." Therefore we conclude that as respects the general grounds, in so far as the double-indemnity feature of the policy is concerned, and the interest thereon, and the $250 death benefit, the assignments of error are without merit.

■ Special ground 1: Error is assigned on the ground that the attorney for the plaintiff was permitted, over objection, to testify substantially that on the day he visited the company's office the officer in charge informed him that the insured was drunk at the time of his death and burned himself alive in the house, and that the company refused to pay any amount except to return the premiums. This witness further testified that he did not make any offer to the company, did not go there for that purpose, but went there to collect the full amount of $500. This evidence was objected to in that (a) it was an attempt to compromise; (b) it was an unlawful attempt to prove bad faith; (c) it was injecting an issue into the case which was not raised by the pleadings; (d) it was highly prejudicial and hurtful and inadmissible under the Code, § 38-408. In our opinion the testimony was admissible to illustrate to the jury whether or not the company acted in bad faith in refusing to pay both the death benefit and the accidental indemnity benefit. The jury were authorized to believe the witness to the effect that no compromise was the purpose of the visit and discussion. This ground is without merit.

■ Special ground 2: Error is assigned on the following charge of the court: "The plaintiff contends that her husband met his death by being burned in a house in Conyers, Rockdale County, Georgia. No effort, gentlemen, has been made and there is no evidence in this case as to how the fire started, what caused the fire, and the plaintiff has not attempted to show how the fire occurred. No evidence in the case has indicated how the fire started. So under such circumstances, gentlemen, I charge you that where it has been shown by the plaintiff that the death of the insured resulted from an external and violent cause, and violent injury, and there being no evidence showing in what manner such external and violent cause was produced, and the issue is as to whether the death is due to an accident within the meaning of the policy of insurance under consideration, I charge you, gentlemen, that the presumption is in favor of an accident, and against the existence of facts bringing the cause within the exceptions contained in the policy. The fact of death by accident, gentlemen, is not to be established by presumption unless there is no evidence whatever as to the cause of that death." The assignments of error are: " (a) Because it was unauthorized by the evidence, there being

no evidence in the case showing from what causes the insured died, whether from natural or accidental causes. (b) Because it took away from the defendant its contractual right, in that the policy provided that the death must be solely by external, violent, and accidental means. This charge instructed the jury that the plaintiff could recover without proof of death by external, violent, and accidental means. (c) Because it instructed the jury that there was a presumption of violent and accidental death drawn from the fact that the body was found in a burning building, and relieved the plaintiff from showing that the insured met his death by external, violent, and accidental means." It is the general rule in this State that where nothing but the fact that burning appears it is presumed that the fire resulted from accidental or providential cause. *Williams* v. *State*, 125 *Ga.* 741 (54 S. E. 661) ; *Ragland* v. *State*, 2 *Ga. App.* 492 (58 S. E. 689) ; *West* v. *State*, 6 *Ga. App.* 105 (2) (64 S. E. 130) ; *Sims* v. *State*, 14 *Ga. App.* 28 (2) (79 S. E. 1133). There is no evidence to show that the burning of the house was other than accidental within the meaning of the terms of the policy. To put it another way, there is no evidence that the defendant committed suicide by burning the house. This leads us to a consideration whether the evidence sustains the finding that the insured had died before the fire, or whether the conflagration caused his death. If his death was caused by the conflagration, then it would follow that it resulted "solely by external, violent, and accidental means." If the evidence does not show circumstantially or directly, or together, that the death of the insured was caused by the burning, then the plaintiff could not recover under the facts and circumstances of this case. It is ably contended by counsel for the company that the plaintiff did not prove whether the death of the insured resulted from the fire, or whether he died before the fire occurred. The burden is on the plaintiff to prove this by a preponderance of the evidence in any case of accidental death within the terms of a policy with provisions similar to the one now under consideration. *New York Life Insurance Co.* v. *Ittner*, 59 *Ga. App.* 89 (200 S. E. 522) ; *Green* v. *Metropolitan Life Insurance Co.*, 67 *Ga. App.* 520 (21 S. E. 2d, 465) ; *Overstreet* v. *Metropolitan Life Insurance Co.*, 69 *Ga. App.* 459 (26 S. E. 2d, 115). This brings us to consider the testimony which bears on the cause of the death of the insured. The undis-

puted evidence shows that the insured was seen alive about one-thirty o'clock on the morning the house burned, at his home with the radio going loud. A member of the fire department testified in substance that, when the fire alarm was given and neighbors reached the back of the house, he was one of the first from the fire department to get there. He further testified, without objection: "From my observation, the body was burned in that fire. You ask that I state to the jury what in my opinion caused his death, from having seen that body under such circumstances, and having seen him previous to that time about eleven-thirty or twelve o'clock in the café. Well, I think, of course, he was burned to death, but, of course, not being there and seeing the house burn, as the evidence was, he could have gotten out of the house, but it was burned so bad, I believe, where he went to step the floor broke in with him and had him caught. The floor had been burst through there. In fact, the whole thing was just about caved in, you see. Cross-examination: You ask if I know whether the floor caved in before Mr. Smith got to the door, or after he was burned to death. Well, colonel, being on the fire department as long as I have, I would say it was. It was caused from the fire, and he was trying to get out, and the whole house was on fire, and everything caved in. You say you would like for me to explain to the jury, if I can, as to when the floor was burned and caved in, whether he was dead before that, or not. Well, of course, I would say that when he was going out the back door, he was trying to get out the door, and when he tried to get out the floor caved in. You ask if I base that on just the fact that he didn't get out, and say there was nothing to hinder him from getting out of the house if he had started in time. Well, of course, the whole house was on fire, and there was smoke and fire, and he just—I don't know whether there was anything to hinder him, or not. I would say the floor caved in before Mr. Smith died, because, I guess, seeing that he got as far as he did, if it had not caved in I believe he could have gotten out." He further testified that the body was six or eight feet from the door. Another witness who was the first to arrive on the scene (having arrived before any member of the fire department): "You ask that I state whether or not in my opinion, from having observed these beds, one of the beds had or had not been occupied. One of the covers was turned back on the bed closest to the door

. . You ask that I tell the jury about how far those beds were from that door. Well, I reached in from the back door and I couldn't touch the bed. It was far enough that I couldn't reach it. I would say, maybe, three feet. That was the bed the cover was turned down on, and it was about three feet from the back door. I couldn't reach it. There was no evidence that the other bed had been used. It was on the right of this bed that evidently had already been occupied." From the evidence which we have set forth above, and other evidence, it is our view that the evidence demanded a finding that the insured was burned to death. There is no evidence whatsoever to the contrary so far as the record shows. The court did not err in instructing the jury as set out in this ground for any of the reasons assigned. This ground is without merit.

■ Special ground 3 complains because the court charged: "I charge you that the term 'under the influence of narcotics or intoxicating liquors' as used in this policy of insurance which will excuse the insurance company from liability for injuries which resulted in death which happened while the insured was under the influence of narcotics or intoxicating liquors. That means, gentlemen, such influence as really amounts to intoxication. The insured must have drunk enough to have disturbed the action of the physical or mental faculties so that they are no longer in their natural or normal condition, in order to excuse the company from liability on the issue. In other words, gentlemen, let me put it this way: That in order for the defendant to be excused from liability on this issue, it means that the insured must be under the influence of narcotics or intoxicating liquors to such degree as would materially impair insured's ability to care for himself and guard against casualties, such degree, gentlemen, being equivalent to intoxication in the ordinary meaning of that word. Now, if you believe in this case, gentlemen, that this insured met his death while under the influence of narcotics or intoxicating liquors as I have defined that term to mean, in its relations to this insurance policy, then, gentlemen, there could be no recovery in this case, and it would be your duty to find a verdict for the defendant." The exceptions to this charge are: "(a) Because it disregards the provisions of movant's policy and places the burden on it to prove that the insured was under the influence of narcotics or intoxi-

cating liquors to the extent of being intoxicated, while the policy provides that the insured has only to be under the influence of narcotics or intoxicating liquors. (b) Because it took away from movant its contractual rights and authorized the jury to find a verdict against movant unless it proved that the insured was under the influence of narcotics or intoxicating liquors to such a degree as would materially impair insured's ability to care for himself and guard against casualties, while the contract provided that the insurer was not liable if the insured was under the influence of narcotics or intoxicating liquors. (c) Because the charge put a burden of proving that the insured was in a state of intoxication at the time of his death, and then in connection therewith instructed the jury that if they believed this they should find a verdict for the defendant, when defendant movant was admitting an indebtedness of $250. This not only placed a burden of proof beyond the terms of the contract, but also placed the burden on movant of convincing the jury that the plaintiff was not entitled to recover any sum, and a verdict must be for the defendant." The third exception to this charge as set out in subsection (c) is to the effect that in so charging the court failed to take into consideration the fact that the company in its answer had admitted liability to the extent of $250 for the death benefit. We can not agree with this contention for the reason that the trial court in the beginning made it plain to the jury that there was no controversy as to this item, and therefore we can not conceive how the jury could have applied the charge as relating to this item so as to confuse it with the double-indemnity benefit feature. This contention in this portion of the special ground is not tenable. The other portion of the exceptions to the effect that to be under the influence of intoxicating liquors is a different state from (a) having "drunk enough to have disturbed the action of the physical or mental faculties so that they are no longer in their natural or normal condition;" or, (b) "that the insured must be under the influence of narcotics or intoxicating liquors to such degree as would materially impair insured's ability to care for himself and guard against casualties, such degree, gentlemen, being equivalent to intoxication in the ordinary meaning of that word." These exceptions have given us considerable concern. To state the question differently: Is there any material difference in being under

the influence. of intoxicating liquor to any extent, or in being intoxicated from the use of intoxicating liquor to the extent that one is no longer in a natural or normal condition considering the word 'intoxication' in its ordinary meaning? Counsel for the plaintiff in error argue with much persuasiveness that there is quite a difference,—that the definition of the term as given in the charge by the trial court increased the contractual obligations of the company. The term used in the policy, "while under the influence of narcotics or intoxicating liquor" is substantially the same as the term used in our Code, § 68-307, "while under the influence of intoxicating liquors or drugs." Section 20-704 (2), provides: "Words generally bear their usual and common signification." The expression of the court in the charge under consideration, "being equivalent to intoxication in the ordinary meaning of that word" is substantially the provisions of the Code section. In 29 Am. Jur. 763, § 1010, we find this statement: "The words 'intoxicated,' 'intoxicants,' and 'narcotics' mean the use by the insured of liquors or drugs to such an extent as to disturb the action of his mental or physical faculties and substantially to impair his judgment in the exercise of the faculties essential to his safety.". Under the same section the same authority cites the decisions of many courts concerning this question and makes this statement: "Some courts have accordingly construed the clause 'under the influence of intoxicating liquors' to be equivalent to intoxication and not to apply to an insured who has taken a few drinks but is in full possession of his faculties." Webster's Collegiate Dictionary treats "intoxication" and "drunk" as synonymous. In the same authority under the word "drunk" we find "Synonym: drunk, drunken, intoxicated, inebriated . . intoxicated may be exactly synonymous with *drunk,* but is often applied more or less euphemistically to one who is but slightly under the influence of liquor;" See Roget's Thesaurus of English Words and Phrase, § 959, wherein the word "intoxicated" is shown to be a synonym of the word "drunk," and the two words in their variation of usage is also shown. In 22 Words and Phrases, p. 435, under the heading, "Under the influence of intoxicating liquor," we find: "'Intoxication' is an abnormal mental or physical condition due to the influence of alcoholic liquors. Frisvold *v.* Leahy, 15 Cal. App. (2d) 752. (60 Pac. 2d, 151). 'Intoxicated' is defined as affected by

an intoxicant, under the influence of an intoxicating liquor. Term 'under the influence of intoxicating liquor' is synonymous with 'intoxication' as used in statute authorizing recovery by automobile guest for injuries resulting from driver's intoxication. Taylor *v.* Joyce, 4 Cal. App. (2d) 612 (41 Pac. 2d, 967). In prosecution for driving automobile while intoxicated, terms 'intoxicated' and 'under influence of intoxicating liquor' held to have ordinary meaning commonly understood, and were not technical terms requiring definition by court. Scott *v.* State, 130 Tex. Cr. R. 635 (95 S. W. 2d, 396)." And on page 431 of the same authority we find: "Degree of intoxication. To judge that a man is 'intoxicated' by liquor indicates nothing as to the degree, as that expression is commonly used. It may mean much, or it may mean very little. Brehony *v.* Pottsville Union Traction, 218 Pa. 123 (66 Atl. 1006). There are degrees of intoxication varying all the way from *slight stimulation to complete coma.* [Italics ours.] It is only at some point along the line between the two extremes that the loss of control of the mental faculties occurs. In order for a person to be intoxicated, it is not necessary for him to be so much under the influence of intoxicating liquor as to be mentally and physically incapable of taking care of himself. Tracy *v.* Brecht, 3 Cal. App. (2d) 105 (39 Pac. 2d, 498)." We might advert for a minute to discuss the word "influence" in the phrase under consideration. In Roget's Thesaurus of English Words and Phrases, we find that the word has various meanings, according to its usage, including "predominance, sway, ascendancy, reign, control." Webster's Collegiate Dictionary gives as synonyms of the word "influence," the following: "ascendancy, sway, control, mastery."

In *Kea* v. *State,* 52 *Ga. App.* 211 (182 S. E. 802), this court said: "If, under the evidence in this case, you believe beyond a reasonable doubt that the defendant while he was operating this automobile was under the influence of intoxicating liquors to any extent whatsoever, you don't have to show he was drunk; if he was under the influence of intoxicating liquor whatever, then he was guilty whether he was drunk or not." The court held that the charge was not erroneous. Counsel for the company in the instant case cite the decision in *Kea* v. *State,* supra, and contend that under that decision to be "under the influence of intoxicating liquor" does not mean that you must be drunk or intoxicated.

The court in the *Kea* case was evidently using the words in their common significance, and simply meant that to be under the influence of intoxicating liquors did not mean that one would have to be in a state of coma, or approaching that state, using the words in their ordinary meaning. Therefore, considering the interpretation of the term "under the influence of intoxicating liquors" as defined by this court in *Chapman* v. *State*, 40 *Ga. App.* 725 (151 S. E. 410) ; *Kea* v. *State*, supra, and *Hall* v. *State*, 58 *Ga. App.* 398 (198 S. E. 713), as compared with the charge complained of in the instant case, in view of the authorities we have above set forth in connection with the decisions of this court, we find no material differences when applied to the facts of the instant case. To be under the influence of intoxicating liquors is to be swayed to some degree from normalcy. Between the point where the influence of intoxicating liquors takes sway and predominance and dethrones normalcy, whether it be from imbibing little or more, there are degrees until a state of coma prevails or when one in general parlance is "knocked out." All along the line there are degrees, and from one point to the other one may be under the influence of intoxicating liquors, and intoxicated, within the meaning of the phrase in question, regardless of the degree. The court did not err in overruling the motion for a new trial for any of the reasons assigned in this ground.

■ Special ground 4 concerns the penalty of $125 and attorney's fees of $200. Regarding the death benefit of $250, the company admitted in its answer that this was due, and pleaded a previous tender and a continuing tender. The evidence as to whether or not any previous tender had been made is in sharp conflict, and the jury found in favor of the plaintiff. So far as this $250 death benefit is concerned, we feel unauthorized to disturb the finding of the penalty and the attorney's fees concerning this item. As to the double-indemnity benefit of $250, under the evidence and record of this case we are firmly convinced that the company was within its rights in having a jury pass upon the question as to whether or not at the time the insured met his death he was under the influence of intoxicating liquors. The question of whether we are authorized to divide the penalty and the attorney's fees as between the two items, rather than reverse the whole case, seems to be novel, but after consideration we are of the opinion that we are authorized to do so. So far

as this feature of the case is concerned we approve the penalty of twenty-five per cent., that is, $62.50 and $100 attorney's fees as applied to the death benefit, but disapprove the penalty of $62.50 and $100 attorney's fees as applied to the double-indemnity benefit. It is clear that the penalty of $125 was the maximum as applied to each item. We think, therefore, we are correct in reasoning that the jury arrived at $200 attorney's fees applying it equally to each item of $250. It does not appear to us that the refusal of the company to pay the double-indemnity benefit was "frivolous and unfounded." *Life & Casualty Insurance Co.* v. *Jordan,* 69 *Ga. App.* 287 (25 S. E. 2d, 103). But on the contrary we hold as a matter of law that under the evidence in this case the refusal to pay was not frivolous and unfounded. The judgment is therefore affirmed provided the plaintiff will, within ten days from the date the remittitur is received in the court below, write off of the judgment the total sum of $162.50. Otherwise the judgment is reversed.

*Judgment affirmed, with direction. Broyles, C. J., and Mac-Intyre, J., concur.*