77338, 77572. VULCAN LIFE INSURANCE COMPANY v. DAVENPORT; and vice versa.
(380 SE2d 751)

BEASLEY, Judge.
These appeals arise from a suit brought by Davenport against his health insurance carrier, Vulcan Life Insurance Company. The complaint sought medical expenses incurred by Davenport when his vehicle collided with an ambulance, plus damages for nonpayment of the claims. Vulcan denied the claim on the strength of the following policy exclusion: "INTOXICANTS AND NARCOTICS: We will not be liable for any loss resulting from your being drunk (except in Oklahoma or Minnesota) or under the influence of any narcotic unless

taken on the advice of a physician." This is a departure from the language approved in OCGA § 33-29-4 (b) (9). See also subsection (a). The focal issues were whether Davenport was "drunk" and whether his injuries resulted from his being "drunk."

The evidence showed that on the afternoon of August 19, 1983, Davenport bought a pint and a fifth of whiskey and began drinking it while driving his pickup truck from Dalton back to Ellijay, Georgia. When he encountered an emergency unit of the Gilmer County Ambulance Service with its siren on and lights flashing, he decided to follow it. He estimated his speed at 60 to 65 miles per hour over eight miles of mountain road. He ran into the ambulance on a stretch of road under construction around a bridge when it either slowed or stopped for a woman who stepped out from her driveway waving her arms. Davenport's blood alcohol content was .19 percent. He subsequently pled guilty to driving under the influence of alcohol and other traffic violations. His suit against the driver of the ambulance and the agency which operated it was settled for $10,000.

Davenport submitted a medical bill to Vulcan for payment under the policy on September 19, 1983. Upon its receipt Vulcan wrote Davenport for a completed claim form and an attending physician's diagnosis for treatment. Vulcan received a claim form on October 13 indicating that the injuries had resulted from an automobile accident. Vulcan mailed a second notice on November 2 informing Davenport that it was unable to complete the claim processing because it lacked information requested from his physician and the hospital of confinement; the notice itemized the information needed as medical records. Vulcan also requested a copy of the accident report from the Georgia Department of Public Safety, which it received in late November or early December. Upon learning that Davenport had been charged with DUI, and that a blood test had been given with the results pending, Vulcan obtained a copy of the blood test and the results of the traffic citation. After receiving this information on February 3, 1984, Vulcan notified Davenport by letter dated February 13 that his claim was rejected due to the policy exclusion.

Vulcan's position at trial was that Davenport's intoxication level of .19 percent, in conjunction with his admission that he had been drinking when the collision occurred and his plea of guilty to the DUI charge, established that when injured he was drunk as a matter of law and therefore excluded from coverage. By deposition in rebuttal Davenport introduced qualified expert testimony that alcohol consumption affects people differently as each person's system is unique; that a person can build a tolerance to alcohol over time because his system acclimates to the presence of alcohol; and that a person who drinks infrequently has greater physical effects from alcohol at lower levels than a person who drinks regularly or habitually.

The expert had determined through experiments and observation that there was a correlation between the quantity of alcohol consumed and observed physical impairment increasing, in which the individual rate of increase would be different but the general characteristics could always be seen. Generally, from .05 to .10 percent alcohol level there is "impairment of balance, inability to stand erect [and] swaying from side to side . . . By .20 percent their balance is so bad . . . they tend to try to steady themselves by hanging on to things. By .25 you're reaching the area most people associate with the term 'drunk.' The person is so wobbly and staggering on their feet that they look drunk. And by .25 to .30 the person just wants to lie down and go to sleep or pass out. And by .30 most people have passed out." However, it could not be determined what a person's actual level of impairment would be at any given blood alcohol level without knowing his tolerance to alcohol.

Davenport was a regular weekend drinker; he admitted he had been drinking at the time of the collision, but he did not look drunk to witnesses nor was his speech slurred. He testified that his consumption of alcohol "probably had a little something to do with it," but "it wasn't the total cause" of the collision. When he was following the ambulance he was "not drunk," could navigate the curves in the road and had no problems with his vision. A hospital report dictated three days after Davenport's admission described him as complaining of severe abdominal pains and alert and oriented as to time and place. He suffered serious internal injuries. The investigating officer testified that it is entirely possible for alcohol to be involved in an accident but not in fact be the cause of it.

The evidence of a settlement in Davenport's favor against the ambulance driver and service raised an inference of his lack of fault in causing the collision. This relates to that aspect of the policy exclusion which precludes coverage only for losses "resulting from" insured's being drunk. In determining whether the exclusion applied in this case, the jury had to decide not only whether Davenport was drunk but also whether his injuries resulted from his being in such a condition.

Vulcan moved for directed verdict at the close of Davenport's case and again after the presentation of all evidence. Both were denied. The jury found: 1) Davenport was not drunk at the time of the collision and his injuries did not result from his being drunk; 2) Davenport's "state of intoxication" was not the proximate cause nor a contributing cause of his injuries; 3) Vulcan acted in bad faith; and 4) Davenport should be awarded additional bad faith damages in a maximum amount of 25 percent.

The remaining claims had been reserved by agreement of the parties for decision by the court without a jury. The court entered a

judgment awarding Davenport $73,026.32 insurance benefits, $18,256.58 penalty, and $12,500 attorney fees pursuant to OCGA § 33-4-6. The court concluded that because the amount due was determinable at the time of the breach, prejudgment interest in the amount of $19,886.53 was due; that because insufficient notice was given under OCGA § 33-29-3 (b) (8) (C), Davenport was entitled to damages of only $51,137.75; and that he was not entitled to equitable relief as claimed.

Vulcan's amended motion for new trial and motion for judgment notwithstanding the verdict were denied as to the claims under the insurance contract and for prejudgment interest. However, judgment n.o.v. was granted as to the statutory penalties, attorney fees and damages pursuant to OCGA §§ 33-4-6 and 33-29-3 (b) (8) (C). Davenport requested the court by motion to enter findings of fact and conclusions of laws in these regards, which was denied. The parties appeal these rulings.

*Case No. 77338*

1. The threshold issue is the meaning of the word "drunk" in Davenport's hospital, medical, and surgical insurance policy. The policy does not define the word and thus it was left to the jury to determine whether Davenport's injuries were the result of his being "drunk." The insurer denied all claims where the blood alcohol content was .10; that is how it interpreted the word. But that is not the common meaning of this commonly used word, which describes the condition of a person who is under the influence of an intoxicant to a degree which varies depending on who is measuring it for what purpose. It is not a medical term. Nor is it a scientific term, which is how the insurer encapsulated it in practice. It is not a term with a specific legal meaning. Although the term "drunk" has been analyzed, no conclusive definition has been accepted as a matter of law in this state. Likewise, whether in our opinion the evidence showed that Davenport was "drunk" is irrelevant, unless he was "drunk" as a matter of law with respect to insurance coverage.

On several occasions during the trial the judge implored counsel to furnish a working meaning of drunkenness as a standard for the jury. None were offered, no objections were raised to the definition from Webster's Dictionary proposed by the judge midway through the trial, and the jury was charged without objection that to be "drunk" was "to be overcome by alcoholic liquor to the point of losing control over one's faculties; intoxicated." Vulcan did not suggest that the word was a synonym for the statutory word "intoxicated." OCGA § 33-29-4 (b) (9).

OCGA § 40-6-391, sometimes described as the "drunk driving

law," see *State v. Golden*, 171 Ga. App. 27(3) (318 SE2d 693) (1984); 9 EGL, Drunkenness, § 6, refers only to a person being under the influence of alcohol "to the extent that it is less safe for the person to drive." Vulcan quotes from cases where our appellate courts have struggled with semantics in attempting to differentiate between the seemingly synonymous use of "intoxicated," "drunk," "drunken," "under the influence of intoxicating liquors" and such in various contexts, but none of these terms of insobriety is definitive for this contract. See, e.g., *Sapp v. State*, 116 Ga. 182 (42 SE 410) (1902); *O'Connell v. State*, 5 Ga. App. 234 (62 SE 1007) (1908); *Progressive Life Ins. Co. v. Smith*, 71 Ga. App. 157 (30 SE2d 411) (1944).

We are not inclined to accept Vulcan's arguments that under Georgia case law, since Davenport's blood alcohol intoxication level would support a conviction of DUI as defined by OCGA § 40-6-391, he was "drunk" as a matter of law and thereby excluded from coverage. See *Smitherman v. State*, 157 Ga. App. 526-527 (278 SE2d 107) (1981), where this court approved a charge stating that to prove such a violation, the State " 'need not show that the defendant was drunk, but only that he was under the influence of alcohol' " so as to be less safe to drive. Compare the statutory prohibition against furnishing an alcoholic beverage to a person "who is in a state of noticeable intoxication." OCGA § 3-3-22; *Whelchel v. Laing Properties*, 190 Ga. App. 182 (378 SE2d 478) (1989).

When Vulcan drafted the policy, if it intended "drunk" to mean having a minimum .10 blood alcohol level, or being under the influence of an intoxicant in any amount whatsoever, or being in a condition as measured by some other objective criteria such as physical manifestations, it was bound to have so stated.

" 'Exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.' [Cit.]" *St. Paul Fire &c. Ins. Co. v. Snitzer*, 183 Ga. App. 395, 397 (1) (358 SE2d 925) (1987). "[W]here the language contained in an insurance policy is susceptible to two or more constructions, the one most favorable to the insured will be adopted. [Cits.]" *Alley v. Great American Ins. Co.*, 160 Ga. App. 597, 600 (287 SE2d 613) (1981). Accord *MAG Mut. Ins. Co. v. Gatewood*, 186 Ga. App. 169 (1) (367 SE2d 63) (1988); *First Ga. Ins. Co. v. Goodrum*, 187 Ga. App. 314 (370 SE2d 162) (1988).

While it appears to be illogical that a person who pleads guilty to driving under the influence and has a blood alcohol level of .19 when injured in a collision is covered by medical insurance which excludes coverage when injuries result from being "drunk," the terms of the policy differ from the driving prohibitions.

2. Vulcan asserts that even if Davenport was not drunk as a matter of law, the weight of the evidence showed him to be so. The evidence is to be construed on appeal to uphold the jury's verdict, and the sole question for determination is whether there was any evidence to authorize it. *Campbell v. Forsyth*, 187 Ga. App. 352 (1) (370 SE2d 207) (1988) and cits. The evidence was sufficient to support the finding that Davenport was not "drunk" in the sense that term was used in the policy exclusion.

3. We reject Vulcan's contention that the verdict and judgment are contrary to the public policy of this state, as expressed by the recent amendment to OCGA § 40-6-391 stiffening penalties for driving under the influence of alcohol. Proof of a violation of this statute does not establish that a driver was "drunk" as required by the policy drafted by Vulcan, which connotes a more substantial degree of impairment.

4. Vulcan questioned its claims manager at some length on direct examination in regard to the company policy of denying all claims for coverage under the "drunk" exclusion where the policyholder has tested .10 blood alcohol content or over. Davenport pursued the subject on cross-examination in an attempt to show that Vulcan had not complied with the fifteen-working-days time limit imposed by OCGA § 33-29-3 (b) (8) for processing claims in obtaining this information. Vulcan complains that Davenport misstated the law when he suggested to the court that the reasonableness of the claim investigation could authorize a finding of bad faith, and that the emphasis on this issue unfairly prejudiced the jury and fatally tainted the trial.

The subject was introduced on direct examination by Vulcan, no objections were made in regard to the cross-examination, and on redirect examination this witness testified that the claims' investigation procedures were timely implemented. Although the jury did award bad faith penalties, the trial court eliminated them by judgment n.o.v.

Moreover, this line of questioning was material and relevant in determining the meaning of "drunk" as contemplated in the policy exclusion. Questions of relevance and materiality of evidence are for the trial court and in the absence of abuse of judicial discretion, which does not present itself here, this court will not interfere. *Energy Contractors v. Ga. Metal Systems &c.*, 186 Ga. App. 475 (1) (367 SE2d 324) (1988); *Kittles v. Kittles*, 187 Ga. App. 537 (1), (2) and (3) (370 SE2d 803) (1988).

5. Vulcan's enumeration of error that an award of prejudgment interest was precluded by OCGA § 7-4-15 because it was not a "liquidated demand" is without merit. The parties agreed that $73,026.32 was the amount Davenport was entitled to receive for medical expenses if he was covered by the policy, and the issue was not submitted to the jury. The trial court further found that the amount due

was determinable at the time of the breach. This ruling was supported by the testimony of Vulcan's claims manager as to what Davenport would have been entitled to under the policy terms. Thus, recovery of prejudgment interest was also authorized under OCGA § 13-6-13. See *Braner v. Southern Trust Ins. Co.*, 255 Ga. 117 (1) (335 SE2d 547) (1985); *Typo-Repro Svcs. v. Bishop*, 188 Ga. App. 576 (2) (373 SE2d 758) (1988).

6. Contrary to Vulcan's assertions, Davenport's authorization of payments to be made directly to medical providers on some of the proof of loss forms submitted did not constitute an assignment of his policy so as to preclude his seeking recovery of those benefits. "The contract of insurance contemplates that the plaintiff [Davenport] alone is the legal owner thereof, although others than himself are thereby insured. . . . The [complaint] alleges that there has been a breach of the contract between plaintiff and defendant. The measure of damages for this breach is alleged as the amounts which defendant by its contract binds itself to pay upon the happening of a certain event — an [injury] within the terms of the policy — plus other damages sought to be covered for bad faith. That which was assigned by the plaintiff to the [providers] was the same thing which the defendant agreed, when otherwise liable, and when authorized by the plaintiff, to pay direct to the [providers] — that is, reimbursement of plaintiff's debt to the [providers] to the extent of its liability under the contract. The insurance contract [was] . . . still of force and effect. It [was] still a contract between the plaintiff and the defendant, and it [was] not assigned by the plaintiff to anyone. The *cause of action*, if one exists, is an action for damages under the contract, title to which is in the plaintiff. The proceeds of the policy, which are the equivalent of the measure of damages, have been allocated or assigned to the [providers] for the purpose of being applied to the plaintiff's debt to [them]. . . . Accordingly, when under the terms of the policy he authorized the defendant, as he was entitled to do, to pay the proceeds direct to the [providers], the fact that this instrument 'assigns' all benefits under the policy does not make it such an assignment of legal title as to authorize the [providers] to sue on the policy in [their] own name and accordingly such a suit could not be maintained. [Cit.] Nevertheless, the [providers have] such a substantial interest in the proceeds as to make [them] a proper use for whose benefit the action may be maintained by the person having legal title to the contract. [Cit.]" *Reserve Life Ins. Co. v. Peavy*, 94 Ga. App. 31, 32-33 (1) (93 SE2d 580) (1956).

*Case No. 77572*

7. Davenport enumerates six errors, four of which are rendered

moot by our affirmance because they were conditional upon our reversal of errors enumerated by Vulcan in the main appeal.

Davenport requests consideration of his contention that Vulcan violated the notification provisions of OCGA § 33-29-3 (b) (8) by making no response on any submitted claims for twelve weeks while it investigated, without his knowledge, the collision and the involvement of alcohol. By consent of the parties the claim for damages under this count of the complaint was withdrawn from the jury and submitted to the judge. Although the trial court initially ruled in Davenport's favor on this count, it subsequently reversed this ruling by granting Vulcan's motion for judgment n.o.v. thereon.

OCGA § 33-29-3 (b) (8) (A) provides: "All benefits payable under the policy . . . will be payable immediately upon receipt of *due written proof of such loss.* . . . *When* all of the listed documents or other information needed to process the claim have been received, the insurer shall then have 15 working days within which to process and either pay the claim or deny it, in whole or in part, giving the insured the reasons the insurer may have for denying such claim or any portion thereof." (Emphasis supplied.)

The trial court correctly concluded that the separate medical bills submitted by Davenport constituted only one statutory claim which Vulcan was required to pay or notify otherwise upon receiving due written proof of loss. The first and second bills received by Vulcan were not such because they were not accompanied by a completed claim form. The third bill, received on October 13, 1983, was attached to a completed claim form and thus triggered the pay or notify provisions. Within fifteen working days of receiving this proof of loss Vulcan twice wrote the doctor and hospital asking for medical records, and on November 2 timely notified Davenport that "[a]t this time we are still unable to complete the processing of your recent claim due to non-receipt of the information we have requested from either your physician or the hospital to which you were confined. We have made an additional request for the information we need and you may be assured that we will give immediate attention to your claim as soon as that information is received."

During November, while Vulcan acquired the requested medical records and then sought to obtain copies of the accident report and blood alcohol test, no further notice was required as it was acting on information contained in the completed claim form received on October 13 for which notice had already been timely given. Within fifteen days of obtaining the blood alcohol test and traffic citation on February 6, 1984, Vulcan notified Davenport on February 13 that it was denying the claim based upon the "drunk" exclusion. It was Davenport, not Vulcan, who failed to comply with the statute by submitting medical bills which did not constitute a proper proof of loss. Cf. *Blue*

*Cross &c. of Ga. v. Merrell*, 170 Ga. App. 86 (316 SE2d 548) (1984).

8. Davenport also seeks reversal of the judgment n.o.v. favoring Vulcan on the jury award of bad faith damages pursuant to OCGA § 33-4-6. He contends that the evidence indicates that Vulcan's primary defense was the unsupported, controverted inference that because his blood alcohol content was over .10 he was drunk, which defense was unfounded in fact. This was clearly not the case, as there was abundant evidence to authorize the jury, as the trial court recognized, to find that Davenport was legally intoxicated, or "drunk." There was also sufficient evidence to support the verdict that while he had been drinking, he was not "drunk" and his injuries were not the result of his being "drunk."

As was established in *Progressive Cas. Ins. Co. v. Avery*, 165 Ga. App. 703, 706 (1) (302 SE2d 605) (1983): " 'If there [are] any reasonable grounds for an insurer to contest the claim, there is no bad faith. [Cits.]' [Cit.] 'Where the issue on ultimate liability is closely contested, a finding of bad faith is generally unjustified. [Cit.]' [Cit.]" Vulcan had always denied claims where the blood alcohol level was .10 or over. Since as a matter of law and fact Vulcan had a reasonable defense which vindicated its good faith, judgment n.o.v. obviating the jury's award was proper. Id. at 707. Accord *Republic Ins. Co. v. Martin*, 182 Ga. App. 390 (3) (355 SE2d 694) (1987); *Southern Gen. Ins. Co. v. Kent*, 187 Ga. App. 496 (2) (370 SE2d 663) (1988).

*Judgment affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED MARCH 15, 1989 —
REHEARING DENIED MARCH 29, 1989 —

*Swift, Currie, McGhee & Hiers, Donald T. Daugherty, James T. McDonald, Jr., James B. Hiers, Jr.*, for appellant.

*Michael T. Bennett, Michael A. Paulk, David E. Ralston*, for appellee.