A91A1254. JEFFERSON PILOT LIFE INSURANCE COMPANY v. CLARK.
(414 SE2d 521)

BIRDSONG, Presiding Judge.

Jefferson Pilot Life Insurance Company appeals from a judgment based upon a jury verdict in favor of Henry Lee Clark, Jr., in an action to collect the proceeds of a Jefferson Pilot accidental death insurance policy covering Mr. Clark's son, Donnie Lee Clark, issued through his son's employment. While a covered person under the policy, Donnie Lee Clark was killed in a one-car collision in which he was the driver and sole occupant. A blood alcohol test taken after his death revealed that his blood alcohol content was .15 percent.

Relying on a policy provision excluding coverage if Donnie Lee Clark's death was caused by or resulted from an injury sustained while he operated a motor vehicle if he was under the influence of alcohol with a blood alcohol level of at least .15 percent, Jefferson Pilot denied Mr. Clark's claim for the proceeds of the policy. Subsequently, Mr. Clark filed suit, and after a jury verdict, the trial court entered judgment in favor of Mr. Clark for $80,000 plus interest. This appeal followed.

Jefferson Pilot contends the trial court erred by ruling the public policy of this state requires that the exclusion contain an implied requirement that driving with a .15 percent blood alcohol level was the proximate cause of death, by charging the jury on the proximate cause requirement, and by submitting a special interrogatory to the jury on whether the death was proximately caused by Donnie Lee Clark's intoxication. Jefferson Pilot also contends the trial court erred by restricting the testimony of a state patrol accident investigator, and by refusing to allow Jefferson Pilot opening and closing argument. *Held*:

1. Initially we must address Mr. Clark's arguments that Jefferson Pilot's enumerated errors are harmless because of certain of the trial

court evidentiary rulings, including the denial of a motion in limine to exclude the blood test results, were erroneous. Since Mr. Clark did not file a cross-appeal contesting any of the trial court's rulings, we cannot consider these assertions. *Chester v. Ga. Mut. Ins. Co.*, 165 Ga. App. 783 (302 SE2d 594). Accordingly, these arguments are without merit.

2. Although Jefferson Pilot enumerates as error the trial court's ruling that the exclusion at issue must implicitly contain the requirement that the .15 percent blood alcohol level was the proximate cause of Donnie Lee Clark's death to satisfy the public policy of this state, we must first examine the exclusion to determine the scope of its application. The relevant part of the exclusion states: "This policy does not cover any loss, caused by or resulting from . . . (6) any injury sustained while operating a motor vehicle if the covered person was under the influence of alcohol as evidenced by a blood alcohol level of at least 0.15% by weight/volume (150 milligrams per 100 milliliters)."

First, we note that not even Mr. Clark has asserted that the exclusion includes a causation requirement. Instead, he has contended that the exclusion was deficient because it did not contain such a requirement.

Secondly, without a covered injury, there is no covered loss, and without a covered loss, there can be no recovery under the policy.

It is uncontroverted that the injury, death, was sustained, as set forth in the exclusion, "while the deceased was under the influence of alcohol as evidenced by a blood alcohol level of at least .15% by weight volume (150 milligrams per 100 milliliters)." (Tests confirm deceased had an alcohol content of .15 percent.) The injury was sustained at a time the deceased had .15 percent blood alcohol content. This injury therefore came within the exclusion of the policy thus eliminating an "injury" and without an injury, covered, there can be no loss.

Nothing in the exclusion of the policy refers or requires that the intoxication cause the accident, injury or loss. Therefore, this exclusion is valid without a causation requirement.

The language of this exclusion does not require that Donnie Lee Clark's intoxication be the proximate cause either of his injury or of the automobile accident in which his injury was sustained. This exclusion requires only that the "loss" (Donnie Lee Clark's death) be caused by or result from an "injury" *sustained while operating* a motor vehicle if he was under the influence of alcohol as evidenced by a .15 percent blood alcohol level.

The term "caused by or resulting from" requires a causal relationship between the *"loss"* and any one or more of six different circumstances (of which an *"injury"* *"sustained"* while Donnie Lee Clark operated a motor vehicle when he was under the influence of

alcohol as evidenced by a blood alcohol level of .15 percent is but one). Thus, if Donnie Lee Clark's death was not caused by or did not result from any one of the six situations or circumstances listed, the exclusion would not apply.

Considering circumstance six, the plain language of the exclusion does not require that the *injury* causing Donnie Lee Clark's death be caused by or result from his operation of the car while under the influence of alcohol. This exclusion requires only an "injury" which is *"sustained while"* Donnie Lee Clark *"operated"* the car while under the influence of alcohol as evidenced by his blood alcohol level of .15 percent. The exclusion does not contain the words "caused" or "resulted," and no reasonable definition of any words in this exclusion will allow an interpretation which permits implication of a causation requirement between the injury and driving under the influence with a .15 percent blood alcohol level.

In particular, the word "sustained" not only does not carry a connotation of causation, but the generally accepted definitions of "sustain" have the opposite meaning. As used in this sense, "sustain" can only mean "to experience or to suffer" (American Heritage College Dictionary, 2d edition); "to undergo, experience, or suffer (injury or loss, etc.)" (Webster's Encyclopedic Unabridged Dictionary of the English Language); "to suffer, receive, undergo" (Webster's Third New International Dictionary); "to suffer, bear, undergo" (Black's Law Dictionary, 5th ed.). Therefore, in interpreting this policy we must give "sustain" its usual meaning (OCGA § 13-2-2 (2)), and that does not include a definition that forces a causation requirement in this exclusion.

Interpretation of this policy as the dissent proposes would require that the exclusion read as follows: This policy does not cover any loss caused by or resulting from any injury caused by or resulting from the operation of a motor vehicle while the covered person was under the influence of alcohol as evidenced by a blood alcohol level of at least .15 percent. The plain language of this exclusion does not support such an interpretation, and courts are not at liberty to revise contracts while interpreting them.

Moreover, this exclusion is not ambiguous. Ambiguity is " 'duplicity, indistinctness, an uncertainty of meaning or expression.' " *Tarbutton v. Duggan*, 45 Ga. App. 31 (163 SE 298). A word or phrase is ambiguous when " ' "it is of uncertain meaning and may be fairly understood in more ways than one." ' " *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (381 SE2d 322). Since the words in this exclusion are plain and obvious, however, they should be given their literal meaning. *United States Fire Ins. Co. v. Capital Ford &c.*, 257 Ga. 77, 79 (355 SE2d 428).

Although the dissent is concerned that this exclusion denies the

proceeds of the policy even if the death is sustained from a plane falling from the sky, this concern is misplaced. Disregarding the obvious fact that driving with a .15 percent blood alcohol level is a serious traffic offense and places the lives of innocent people in jeopardy, insurance is a matter of contract. Therefore, if Mr. Clark's son wanted to have coverage with a causation requirement, he should have purchased a private policy which under OCGA § 33-29-4 would have had such a provision. Instead he selected and received the benefits of a group policy and must therefore be bound by the terms of the group employment policy.

Although ambiguous exclusions may be construed liberally in favor of the insured and strictly construed against the insurer, this cannot be done when the exclusion is clear and unequivocal. *United Svcs. &c. Assn. v. Lail*, 192 Ga. App. 487, 489 (385 SE2d 424). Further, "[w]hen the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one reasonable construction, the court must expound the contract as made by the parties. [Cit.] Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage." *Burnette v. Ga. Life &c. Co.*, 190 Ga. App. 485 (379 SE2d 188). Additionally, reaching the result proposed by the dissent requires that *Burnette v. Ga. Life &c. Co.*, supra, which has in substance the same exclusion, be reversed. Moreover, contrary to the dissent's contention that the exclusion in *Burnette* had no "language such as 'caused by or resulting from,'" the *Burnette* opinion states clearly "the policy excluded losses *resulting from* '(i)njuries sustained while (the insured). . . .'" (Emphasis supplied.) 190 Ga. App. 485. Accordingly, we hold that application of this exclusion as written does not require that Donnie Lee Clark's death be proximately caused by his driving while under the influence of alcohol.

Therefore, we must next consider whether this exclusion, without a proximate cause requirement, violates the public policy of this state. In deciding that this exclusion did so the trial court did not specify what public policy this exclusion would violate, and nothing in the record suggests a public policy which might be implicated. Instead, the trial court's concern, like the dissent's, appears more to be directed to the perceived unfairness in how the exclusion might be applied in other circumstances. Nevertheless, perceived unfairness in a particular extreme situation does not make the exclusion contrary to public policy. Chapter 8 of Title 13, Official Code of Georgia Annotated, contains the legislative provisions regarding illegal and void contracts generally. None of those provisions touches on this exclusion.

Also, contrary to Mr. Clark's allegations, the record supports the

trial court's conclusion the insurance policy was a group accident policy, issued pursuant to his son's employment with the Georgia Department of Corrections. See OCGA Title 33, Chapter 30. Therefore, OCGA § 33-29-4 is inapplicable to this policy (OCGA § 33-30-11), and we have found no other provision of Georgia law prohibiting exclusions of this nature. Moreover, accidental death coverage is not required by Georgia law, and, does not provide protection for the general public. Compare *GEICO v. Dickey*, 255 Ga. 661 (340 SE2d 595); *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335 (329 SE2d 136). Further, " '[i]t is the paramount public policy of this state that courts will not lightly interfere with the freedom of parties to contract.' " *My Fair Lady of Ga. v. Harris*, 185 Ga. App. 459, 460 (364 SE2d 580). Accordingly, we do not find the exclusion in Jefferson Pilot's policy violates the public policy of this state.

On the contrary, this exclusion is consistent with the state's public policy of improving safety on the highways (*Cotton States v. Neese*, supra at 341) by eliminating from its streets and highways drivers who are under the influence of alcohol. This public policy is reflected in the recent amendments to the DUI law of this state *lowering* the level at which one is presumed to be under the influence of alcohol and enhancing the measures which might be taken against DUI offenders (e.g., OCGA § 40-6-391.2) and providing remedies against those who serve them alcohol (e.g., OCGA § 51-1-40). In reaching this conclusion, we note that the .15 percent blood alcohol concentration in this exclusion is almost *twice* the .08 percent blood alcohol concentration at which one is *presumed* to be under the influence of alcohol in this state after the 1991 amendment to OCGA § 40-6-392 (b) (3) to the extent that it is less safe for that person to drive. See OCGA § 40-6-391 (a) (1).

Although the dissent appears to suggest that the .15 percent blood alcohol level or any blood alcohol level is some arbitrary provision unrelated to the operation of a vehicle, the fact is that a driver with that high blood alcohol level is a significantly less safe driver. Such a driver's ability to operate his vehicle is significantly impaired under normal operating conditions and it is beyond dispute that his ability to respond to emergencies, even those not of his creation, is delayed dramatically. Accordingly, this provision is legitimately included in this policy and it is not merely some trap for unwary policyholders as the dissent suggests.

Also, this exclusion is contained in an insurance policy which pays benefits when a covered person sustains an accidental injury or death. Thus, it is appropriate to consider the likely relationship between covered persons who are *operators* of motor vehicles with this blood alcohol concentration and the likelihood of accidental injuries and deaths. While the record on appeal is not extensive on this point,

we need not ignore universally accepted traffic safety studies and statistics showing that drivers who are under the influence of alcohol are involved in great numbers of motor vehicle accidents and that great numbers of people are injured or killed as a result of alcohol-related automobile accidents (e.g., a recent report that 355,000 were injured and 22,000 were killed in the United States last year). This report also shows that two-thirds of those killed in alcohol-related automobile accidents were under the influence of alcohol. Further, a state patrolman testified in this case that over half of the hundreds of automobile accidents he has personally investigated were the result of intoxication. As this is true generally of drivers who are under the influence of alcohol, it can be assumed there is a higher correlation between the incidence of motor vehicle accidents and operators with blood alcohol concentrations of .15 percent.

Additionally, this exclusion applies only to *operators* of motor vehicles with blood alcohol concentrations of .15 percent, a class which is even more likely to be injured or killed in alcohol-related automobile accidents. Therefore, this exclusion is reasonably designed to protect the insurer from unreasonable exposure to risk, and it is not unreasonable for an insurance company to exclude from coverage a class which can be expected reasonably to sustain proportionally higher numbers of accidental injuries or death because of their own misconduct, thus reducing insurance premiums in accordance with public policy. *Cotton States v. Neese*, supra at 341.

Although Mr. Clark relies on *Vulcan Life Ins. Co. v. Davenport*, 191 Ga. App. 79 (380 SE2d 751), that case does not stand for the proposition that intoxication in all cases must be the proximate cause of the injury for a policy exclusion to be valid. Further, *Vulcan Life* was governed by OCGA § 33-29-4, which imposes a proximate cause requirement, and, significantly, the particular policy in issue itself provided that the company should "not be liable for any loss *resulting* from your being drunk. . . ." (Emphasis supplied.) Id. Consequently, the exclusion in this appeal, which was not controlled by OCGA § 33-29-4 and had no causation requirement, differs materially from the exclusion in *Vulcan Life*, which specifically included such a causation requirement.

In the same manner, *Progressive Life Ins. Co. v. Smith*, 71 Ga. App. 157, 158 (30 SE2d 411), does not require a contrary result. The exclusion at issue in *Progressive Life* provided that " '[n]o accidental death benefit will be paid if the death of the insured is a result of suicide, whether sane or insane . . . or while under the influence of narcotics or intoxicating liquor.' " Although the opinion includes the statement "we are without authority to conclude, as a matter of law, that the evidence demanded a finding that at the time the house was consumed by fire, the insured was under the influence of intoxicating

liquor within the meaning of the insurance policy to such an extent as to show a causal connection between his death and the fire which consumed the building," this statement concerns the sufficiency of the evidence supporting the jury's verdict that Smith was not under the influence of intoxicating liquor. Id. at 160. Consequently this statement is not a holding on whether a causation provision is required, and is at most dicta. This court, in *Progressive Life*, did not hold and was not called upon to hold whether the language of the exclusion included a causation requirement or the public policy of this state required an implied causation requirement.

Instead, the issue was whether the insured's death was caused by the fire or by some non-accidental cause. If the latter, a death benefit was not authorized under an accidental death policy. That is not the question in this appeal, and *Progressive Life* has no precedential value on this issue.

The issue in this appeal, however, is analogous to that presented in *Burnette v. Ga. Life &c. Ins. Co.*, supra, in which a medical payments policy "excluded losses resulting from injuries sustained while the insured is an occupant of a private automobile being driven in violation of any law or ordinance." (Punctuation omitted.) Presented with a similar public policy argument because the insured person was a minor and could not control the operation of the car, this court held "the public policy of this state is created by our Constitution, laws and judicial decisions. We find no established public policy impediment, by way of Constitution or statute or case law, to an insurer applying the exclusion in issue here. Unlike the automobile policy exclusion at issue in *Cotton States Mut. Ins. Co. v. Neese*, [supra,] the parameters of the instant policy are not prescribed by compulsory motor vehicle insurance statutes. The policy issued by appellee is a limited one designed to provide certain coverage to students engaged in school activities, and there is no requirement that the coverage desired by appellant be provided." (Citations and punctuation omitted.) *Burnette*, supra at 486. Since the exclusion in this appeal is in a group accidental death policy, the same analysis applies. Therefore, to reach the result the dissent proposes, *Burnette* must be reversed.

Accordingly, the trial court erred by engrafting a proximate cause requirement on this exclusion by charging on such a requirement and by submitting a special interrogatory to the jury as to causation.

3. Although under our holding in Division 2 causation should not be an issue in a new trial, we find the trial court's error in imposing a causation provision in this exclusion was compounded by then refusing to allow Jefferson Pilot's expert to state his opinion on the cause of the one-car accident in which Donnie Lee Clark was killed. The record shows that the trial court based this decision on two factors: First, that the state patrolman was not qualified to give his opinion

on the cause of the accident because he was not trained to reconstruct traffic accidents, and second, because the expert stating his opinion would invade the province of the jury.

The record establishes that the expert witness was a Georgia state patrolman. He testified he had been a patrolman for 20 years, he had attended numerous courses on traffic accident investigation (including a portion of his course at the Georgia Police Academy), he was trained to determine the cause of traffic accidents, he had investigated hundreds of traffic accidents, and in almost every wreck he was called upon to decide what caused the accident. Although a witness' qualifications to testify as an expert is an issue committed to the sound discretion of the trial court (*Birge v. State*, 143 Ga. App. 632, 636 (239 SE2d 395)), " '[g]enerally nothing more is required to entitle one to give testimony as an expert than that he has been educated in the particular trade or profession; and special knowledge in regard to a particular subject may be derived from experience as well as study and direct mental application.' " Id. From the testimony in this case on the witness' qualifications, it is clear that the trial court abused its discretion by excluding the testimony about the cause of the accident from the state patrolman who personally investigated the accident. *Gooch v. State*, 155 Ga. App. 708, 709 (272 SE2d 572). Accord *Felton v. White*, 197 Ga. App. 367 (398 SE2d 425); *Massee v. State Farm &c. Ins. Co.*, 128 Ga. App. 439, 443 (197 SE2d 459). There can be no doubt a police officer with investigative experience on automobile collisions is an expert.

Moreover, in excluding the patrolman's opinion because the testimony invaded the province of the jury, the trial court focused on the wrong issue. The issue is not whether the opinion would invade the province of the jury, but whether the subject is a proper one for opinion testimony. *Nichols v. State*, 177 Ga. App. 689, 693 (340 SE2d 654). "Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the layman." *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678). Moreover, an opinion on the cause of the accident is an assessment of fact and not a legal conclusion or a conclusion constituting a mixture of law and fact. See *State v. Butler*, 256 Ga. 448, 450 (349 SE2d 684); *Allison v. State*, 256 Ga. 851, 853 (353 SE2d 805). Accordingly, the trial court erred by excluding this testimony.

4. We also note that Jefferson Pilot is entitled to opening and closing argument if it admits Mr. Clark's prima facie case, and it need not admit his absolute right of recovery. *Payne v. Thebaut*, 180 Ga. 758 (180 SE 725); Uniform Superior Court Rule 13.4. As Jefferson Pilot has the burden of proving that its exclusion applied, if Jefferson

Pilot admits Mr. Clark's prima facie case, it will be entitled to open and conclude argument before the jury. See *Morgan-Hill Paving Co. v. Shanks*, 45 Ga. App. 274, 275 (164 SE 221). Based upon the record in this appeal, however, we cannot conclude that the trial court erred by giving opening and closing argument to Mr. Clark.

*Judgment reversed. Sognier, C. J., McMurray, P. J., Beasley, Andrews, JJ., and Judge Arnold Shulman concur. Carley, P. J., Pope and Cooper, JJ., concur in part and dissent in part.*

POPE, Judge, concurring in part and dissenting in part.

I must dissent to Division 2 of the majority opinion, because I cannot concur with the majority's strained construction of the pertinent insurance contract language. Under the majority's interpretation of this contract language, if an airplane fell from the sky and killed an automobile driver whose blood alcohol level was at least .15 percent, that person's beneficiaries would not be able to recover despite the fact that the person's alcohol level was clearly unrelated to the accident. The exclusions and exceptions paragraph of the insurance policy provides in pertinent part: "This policy does not cover any loss, *caused by or resulting from:* . . . (6) any injury sustained while operating a motor vehicle if the Covered Person was under the influence of alcohol as evidenced by a blood alcohol level of at least 0.15% by weight/volume (150 milligrams per 100 milliliters)." (Emphasis supplied.) The caused by or resulting from language does not just modify the word loss as the majority contends; it plainly requires that a causal connection be shown between the insured being under the influence of alcohol and any injury sustained by the insured while operating a motor vehicle in that condition before this exclusion from coverage is applicable.[1]

In essence, the majority decision disregards the causation language contained in the prefatory paragraph setting forth exclusions and exceptions from coverage and considers only the language of subparagraph (6) which states that injuries are excluded from coverage if they are "*sustained while* operating a motor vehicle if the Covered Person was under the influence of alcohol. . . ." (Emphasis supplied.) Assuming arguendo that the language relied upon by the majority does not plainly require a showing of a causal connection, "[e]xceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit

---

[1] Although appellee erroneously relied on OCGA § 33-29-4 in positing his argument to the court, he has, contrary to the majority's contention, always maintained that a causation requirement should be a part of the exclusion in question.

terms. Where the language contained in an insurance policy is susceptible to two or more constructions, the one most favorable to the insured will be adopted." (Punctuation and citations omitted.) *Vulcan Life Ins. Co. v. Davenport*, 191 Ga. App. 79, 83 (380 SE2d 751) (1989), disapproved on other grounds, *Santiago v. Safeway Ins. Co.*, 196 Ga. App. 480, 482 (1) (396 SE2d 506) (1990). At best, the language in question would be susceptible to two interpretations, and the majority errs in adopting the construction most favorable to the insurer rather than the insured.

*Burnette v. Ga. Life &c. Co.*, 190 Ga. App. 485 (379 SE2d 188) (1989), the only case relied upon by the majority to support its position, is clearly distinguishable from this case. In that case Robert Burnette, a minor, was injured when a car in which he was a passenger crossed the centerline and struck another vehicle. Burnette's guardian sought benefits pursuant to Burnette's student blanket insurance policy. The beneficiary brought suit after the insurer denied coverage under an exclusion contained in the policy for " '(i)njuries sustained while (the insured) is an occupant of a private automobile . . . being driven in violation of any law or ordinance. . . .' " Id. at 485. That case is distinguishable for two reasons. First, the insurance policy in question was a limited one designed to provide certain coverage to students engaged in school activities, and Burnette was not engaged in a school activity at the time of his death; it was not a general accidental death or injury policy as is the policy in this case. Also, contrary to the majority's contention, it is impossible to determine from our decision in *Burnette* if the exclusion in question contained the words "resulting from," as does the policy sub judice. This court's failure to quote such language from the policy, as it did the language quoted above, suggests that the "resulting from" language was not present in that policy. Because the *Burnette* decision is clearly distinguishable from this case, the majority's contention that this opinion would require the reversal of that case is erroneous.

While this court has not had the opportunity to decide whether similar contract language requires a showing of a causal connection, our decisions in *Vulcan Life Ins. Co. v. Davenport*, supra, and *Progressive Life Ins. Co. v. Smith*, 71 Ga. App. 157 (30 SE2d 411) (1944) support the trial court's ruling. In *Vulcan*, supra, the insured brought suit against his health insurance carrier when it refused to pay his medical bills arising from an automobile collision which occurred while the insured's blood alcohol content was above the level that would support a conviction for driving under the influence. The exclusion in that case provided: " 'INTOXICANTS AND NARCOTICS: We will not be liable for any loss *resulting from* your being drunk (except in Oklahoma or Minnesota) or under the influence of any narcotic unless taken on the advice of a physician.' " (Emphasis sup-

plied). *Vulcan*, supra at 79-80. In that case, this court recognized that the policy language required the jury to make two decisions: (1) whether the insured's blood alcohol content of .19 percent meant he was drunk as that term was used in the policy; and (2) if the insured was drunk whether that condition proximately caused the automobile accident underlying the case. Id. at 82 (1). Thus, the only material difference in the policy language between the two cases is that the exclusion in the *Vulcan* case required an initial determination of whether the insured was drunk, whereas the language of the exclusion in this case makes it clear when the insured is considered to be under the influence of alcohol. Both exclusion clauses, however, contain the pertinent "resulting from" language, which this court in the *Vulcan* case recognized requires a showing of proximate cause.

In *Progressive Life Ins. Co. v. Smith*, supra, the insured died in a house fire. The accidental death policy provided by Progressive Life Insurance Company contained the following exclusion: " 'No accidental death benefit will be paid if the death of the insured is a result of suicide, whether sane or insane or while under the influence of narcotics or intoxicating liquor.' " Id. at 157-158. There was evidence that the insured was intoxicated at the time of the fire. This court concluded that the evidence was insufficient to conclude as a matter of law "that at the time the house was consumed by fire, the insured was under the influence of intoxicating liquor within the meaning of the insurance policy to such an extent as to show a *causal connection* between his death and the fire which consumed the building." Id. at 160. Although the majority contends this language is merely dicta, it is clear from the language quoted above that this court in *Progressive* imposed a causation requirement when considering whether the evidence was sufficient to support the jury's verdict.

The majority's focus on public policy in this case is misplaced. The unambiguous language of this contract dictates a showing of a causal connection and makes it unnecessary to decide whether the public policy of this state would require that such a connection be shown.[2] While I share the majority's concern of removing intoxicated drivers from our highways and do not consider a driver's blood/alco-

---

[2] In my opinion the public policy of this state would require that a causal connection be shown between any exclusion from coverage and the event causing injury or death. Insurance companies properly should be able to exclude from coverage certain voluntary risks taken by the insured which increase the chance that the insurer will be exposed to liability. The insurance industry, however, is closely affected with the public welfare. For that reason, public policy requires that insurance contracts be interpreted in a practical, reasonable and fair manner, consistent with the understanding of the average man. To allow an insurance company to insert an exclusion from coverage and not require any correlation between the exclusion and the event causing injury or death smacks against notions of fairness and allows insurance companies to injustly avoid the obligation they assume to their insureds by accepting premiums from them.

hol level unrelated to a driver's ability to operate a vehicle as the majority contends, this court cannot allow that concern to cause us to abandon time-honored rules of contract construction or, in this case, to ignore the plain language of the contract. I do not agree with the majority's conclusion that a showing of causation subjects the insurer to unreasonable exposure, because the contract language clearly exonerates the insurer from all liability in those situations in which alcohol is a causative factor. If alcohol is unrelated to the accidental death, the insurer's risk is the same as it would be in any non-alcohol-related accident.

In sum, the language of the policy exclusion in question clearly requires a showing of a causal connection between the event causing injury or death and the insured's condition of being under the influence of alcohol before the exclusion is applicable. Even if the language is arguably ambiguous, when the language is construed to support the jury's verdict and in favor of the insured, as we are required to do, we must affirm the trial court's ruling. Accordingly, the trial judge correctly charged the jury that the insurer had the burden of showing a causal connection between the deceased's blood alcohol level at the time of death and the accident resulting in his death and did not err in submitting a special interrogatory to the jury concerning causation.

I am authorized to state that Presiding Judge Carley and Judge Cooper join in this dissent.

DECIDED DECEMBER 5, 1991 —
RECONSIDERATION DENIED DECEMBER 20, 1991 —

*Wilkes, Johnson & Smith, Ken W. Smith,* for appellant.
*Simpson & Gray, Ralph F. Simpson, Joseph I. Carter,* for appellee.