[No. 55978-3.   En Banc.   July 27, 1989.]

DANIEL EDDY, ET AL, *Petitioners,* v. FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., *Respondent.*

*Lawrence Cary Smith* and *Patrick J. Downey,* for petitioners.

*Lukins & Annis, P.S.,* by *Eugene I. Annis* and *Erika Balazs,* for respondent.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington State Trial Lawyers Association, amici curiae for petitioners.

SMITH, J.—Petitioners[1] Daniel and Darcy Eddy, husband and wife, seek coverage under the underinsured and personal injury protection provisions of their automobile insurance. Their claims arose when an uninsured motorist crossed the centerline, colliding with an automobile driven by Daniel Eddy. Mr. Eddy was driving a Dodge station wagon belonging to his employer, AT&T Information Systems, Inc. (AT&T). The other driver was at fault. Mr. Eddy had exclusive use of the company vehicle. He claims he had consumed alcohol just prior to the accident in violation of AT&T rules for drivers authorized to drive its vehicles and that he therefore did not have "regular use" of the automobile assigned to him.

The Eddys' insurer, Fidelity and Guaranty Insurance Underwriters, Inc., (USF&G) denied payment of their claims, citing a provision in their policy specifically excluding coverage for injuries sustained while operating a vehicle "available" or "furnished" for the insured's "regular use" which is not insured for liability coverage under USF&G's policy.

We conclude that, under the circumstances of this case, any violation by Mr. Eddy of his employer's no–alcohol restrictions while driving the vehicle did not annul his exclusive and "regular" use of the company vehicle, and hold that dismissal on summary judgment of the claims of both Daniel and Darcy Eddy is proper.

We therefore reverse in part and affirm in part the decision of the Court of Appeals.

Two issues are presented by this case:

1. Whether violation of a condition for use of a company vehicle provided by an employer for the exclusive use of an employee in the regular course of employment and for commuting to work removes that vehicle from "regular use" contemplated by the "other vehicle" exclusion of USF&G's

---

[1]To avoid confusion, the Eddys will be referred to as "petitioners," even though they are cross respondents as well. Their insurer, USF&G, will be referred to as "respondent," even though it filed a cross petition.

insurance policy covering the employee's personal vehicles; and

2. Whether, under the circumstances of this case, a claim by the employee's spouse for loss of consortium survives the "other vehicle" exclusion of USF&G's insurance policy covering the employee's personal vehicles.

AT&T Information Systems, Inc., (AT&T) provided a Dodge station wagon for the exclusive use of Petitioner Daniel Eddy to drive on company business and between work and his home. The employer permitted Mr. Eddy to use the automobile for personal errands. However, AT&T forbade use of its vehicles by drivers after they had consumed alcohol.

On August 23, 1984, on the way home from work, Mr. Eddy stopped at a tavern for a drink with co-workers. At about 11 p.m. he left the tavern and drove the AT&T station wagon toward his home. An uninsured motorist crossed the centerline and collided head-on with the vehicle driven by Mr. Eddy. The motorist died. Mr. Eddy was seriously injured. He was not at fault.

At the time of the accident, Petitioners Daniel Eddy and his wife, Darcy Eddy, owned two automobiles. Respondent Fidelity & Guaranty Insurance Underwriters, Inc. (USF&G) insured them. Mr. Eddy sought coverage under the underinsured motorist and personal injury protection provisions of the USF&G policy. Similarly, Mrs. Eddy sought compensation for loss of consortium.

The USF&G policy included these provisions:

> We do not provide Underinsured Motorists Coverage for property damage or bodily injury sustained by any person:
> 1. While operating, or occupying, any motor vehicle owned by or *available for the regular use of you* or any family member which is not insured for Liability coverage under this policy.
> . . .
> This insurance does not apply:
> . . .
> (e) to the named insured or any relative while occupying any automobile owned by the named insured or *furnished for the*

*named insured's regular use* and not insured for AUTOMO-BILE PERSONAL INJURY PROTECTION;

(Italics ours.) Respondent refers to these as "other vehicle" exclusions.

USF&G denied coverage for both claims, asserting that the AT&T vehicle driven by Mr. Eddy had been provided to him for his "regular use." The Eddys then filed this action.

The insurance company moved for summary judgment asserting that, as a matter of law, there was no coverage under its policy. The Honorable John A. Schultheis, Spokane County Superior Court, denied the motion. USF&G appealed.

The Court of Appeals, Division Three, in a published opinion, agreed with USF&G that the AT&T vehicle was furnished to Daniel Eddy for his regular use. The appellate court reversed the trial court and ordered it to grant summary dismissal on Mr. Eddy's claim. But the Court of Appeals held that the trial court was correct in denying dismissal of Mrs. Eddy's loss-of-consortium claim. *Eddy v. Fidelity & Guar. Ins. Underwriters, Inc.*, 53 Wn. App. 189, 765 P.2d 1339 (1989). This court granted review. 112 Wn.2d 1016 (1989).

An exclusion from underinsured motorist coverage based upon the "regular use" of an automobile not insured under the liability provisions of a policy, the so-called "other vehicle" exception, is authorized by statute. *See* RCW 48.22.030(2). The Eddys concede that there is no coverage for Mr. Eddy's claim if his use of the company vehicle was a "regular use." *See* 12A G. Couch, *Insurance* § 45:636, at 135 (2d ed. 1981). However, they argue that his use of his employer's vehicle at the time of the collision was not a "regular" use because Mr. Eddy had consumed alcohol before continuing his drive home from the tavern in the company car, despite express prohibition by his employer against use of a company car by an employee who had just consumed alcohol. The question becomes whether such a deviation from permitted use of the vehicle converts it into

an irregular use, thus placing it beyond the scope of the "other vehicle" exclusion in Mr. Eddy's own automobile insurance policy.

Petitioners argue that, as a matter of law, an unpermitted use cannot be a regular use. The Court of Appeals rejected that argument. *Eddy v. Fidelity & Guar. Ins. Underwriters, Inc.*, 53 Wn. App. 189, 192, 765 P.2d 1339 (1989).

The Court of Appeals distinguished *Moritz v. St. Paul Fire & Marine Ins. Co.*, 48 Wn. App. 521, 739 P.2d 731 (1987), relied upon by petitioners. The court stated: "We do not find *Moritz* applicable as it involved a question of coverage under the employer's policy rather than an exclusion under the employee's policy." *Eddy v. Fidelity & Guar. Ins. Underwriters, Inc.*, 53 Wn. App. 189, 192, 765 P.2d 1339 (1989).

The Court of Appeals did not address *Palmer v. Glens Falls Ins. Co.*, 58 Wn.2d 88, 360 P.2d 742 (1961), a case cited by petitioners for the proposition that "the exclusion does not apply when the auto is not being put to its regular use." However, *Palmer* does not stand for that broad proposition.

In that case Robert B. Palmer had borrowed his son–in–law's automobile for more than 2 months and had used it regularly for business. The vehicle developed problems requiring repair. Mr. Palmer obtained specific authorization from his son–in–law to have the automobile repaired. En route to the repair shop, Mr. Palmer negligently struck another vehicle.

Palmer was seeking to avoid the "other vehicle" exclusion of the *liability* provisions of the policy covering his own car. He was seeking indemnity for his liability to a passenger in the vehicle he struck. He was not seeking to avoid exclusion of coverage under underinsured or personal injury provisions of his policy to compensate him for his own injuries. Moreover, the "irregular" use in that case was specially

authorized by the owner of the "other vehicle." The "special" use was independent of Palmer's "regular" use of the vehicle.

■ In this case, Daniel Eddy was driving the company vehicle home. This was within the scope of his authorized and regular use of it. But for his regular use of the vehicle to commute between home and work, he would not have been using the AT&T station wagon at the time of the collision. His purpose, destination and route were not extraordinary. What was extraordinary was that he had apparently violated a company rule during this trip. There was neither specific authorization for nor specific prohibition of the particular trip. There was a general authorization and a general prohibition identical to those in force during Mr. Eddy's routine use of the vehicle. Further, the injured party (Mr. Eddy himself) created his own "irregularity" of use. We cannot accept petitioners' contentions. To do so would permit drivers to create "irregularity" of use merely by violating, however slightly, any restrictions owners place on drivers' use of vehicles provided for the regular use of those drivers.

This court stated in *Grange Ins. Ass'n v. MacKenzie*, 103 Wn.2d 708, 712, 694 P.2d 1087 (1985) that "[e]xclusive use necessarily constitutes regular use, regardless of the purposes of that use." Compare 12A G. Couch, *Insurance* § 45:1084, at 740–41 (2d ed. 1981) (considering the effect of a "regular use" exclusion on liability coverage). The type of use not excluded under the "other vehicle" exception is the "sporadic, isolated incidence of driving of a noncovered car." *Grange Ins. Ass'n v. MacKenzie*, 103 Wn.2d 708, 712, 694 P.2d 1087 (1985). This enables the insurer to provide coverage for isolated use of vehicles not named in the policy without payment of additional premiums. But it disallows interchangeable use of other vehicles for which premiums have not been collected. *See* 12A G. Couch, *Insurance* § 45:1074, at 727–28 (2d ed. 1981).

Here, it is uncontroverted that Mr. Eddy was the exclusive operator of the company vehicle at all times when he

was actively employed by AT&T. Regardless how limited his consumption of alcohol may have been when using the company station wagon, the vehicle was *furnished* or *available* for his *regular use* within contemplation of the statutory language permitting an exception to underinsured motorist coverage, and within the scope of the exclusionary language in USF&G's policy. He used the vehicle every working day of his employment with AT&T until the accident. That Mr. Eddy chose, apparently on one occasion, to violate his employer's rule of conduct does not alter the conclusion that he was driving a vehicle provided for his regular use.

*Amicus curiae*, the Washington State Trial Lawyers Association, argues that the "regular use" exclusion is ambiguous. Even absent a formal definition of "regular use," this argument is answered by the holding in *Grange* that exclusive use constitutes regular use for purposes of an exclusionary clause. We cannot agree with the suggestion of *Amicus* that a reasonable person reading the plain language of the policy could conclude other than that daily exclusive use of a company vehicle is a "regular" use excluded from coverage by the contract language. The Court of Appeals was correct in ordering summary dismissal of Mr. Eddy's claim.

■ The Court of Appeals was not correct, however, in affirming the trial court's order in favor of the claim of Darcy Eddy. This court considered, in the analogous case of *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 738 P.2d 251 (1987), whether a related but separate claim of third parties survives an exclusionary clause which successfully excluded the direct claims of the injured party. *Eurick* involved claims of parents of a young man who was killed while riding as a passenger on a motorcycle. The parents sought recovery under the underinsured motorist provisions of their own policy. This court denied coverage, concluding that a reasonable person reading the insurance policy would

believe that the motorcycle exclusion[2] applied to *all* claims arising from injuries sustained by a motorcycle driver or rider. *Eurick v. Pemco Ins. Co.,* 108 Wn.2d 338, 342, 738 P.2d 251 (1987).

The Court of Appeals concluded that *"Eurick* must be limited to the motorcycle exclusion" because the Legislature specifically authorized a motorcycle exclusion from underinsured motorist coverage in RCW 48.22.030(2). *Eurick v. Pemco Ins. Co.,* 108 Wn.2d 338, 343, 738 P.2d 251 (1987). However, in the same section of the statute, the Legislature specifically authorized an exclusion for a vehicle provided for the insured's "regular use."[3] USF&G's policy language is substantially similar to the language of the statute. We conclude that a reasonable person reading USF&G's policy would believe that the "other vehicle" exclusion applied to Darcy Eddy's claim. Thus, *Eurick* is not distinguishable from this case on this point.

*Amicus'* characterization of Mrs. Eddy's claims as independent of Mr. Eddy's claims may be an accurate one. However, it does not alter the fact that her claim is but one of several arising from injuries sustained by a person who was, at the time, within the scope of a valid exception to underinsured motorist coverage, as in *Eurick.* It would afford the insurer only an illusory protection from risk if the exclusion did not reach *all* claims arising from injuries sustained by one "operating or occupying a motor vehicle owned by or available for the regular use by" the named insured when that vehicle was not insured under the liability coverage of the same policy. *See Eurick v. Pemco Ins.*

---

[2]In *Eurick,* the critical exclusionary language was: "'This policy does not apply . . . to bodily injury to an insured while operating, occupying or using a motorcycle'." *Eurick v. Pemco Ins. Co.,* 108 Wn.2d 338, 340, 738 P.2d 251 (1987).

[3]RCW 48.22.030(2) requires insurers to provide underinsured motorist coverage which protects their insured "except while operating or occupying a motorcycle or motor–driven cycle, *and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member,* and which is not insured under the liability coverage of the policy." (Italics ours.)

*Co.,* 108 Wn.2d 338, 342, 738 P.2d 251 (1987). Compare RCW 48.22.030.

At the time of his injuries, Mr. Eddy was subject to the "other vehicle" exclusion. The fact that Mrs. Eddy was not occupying the "other vehicle" at the time of Mr. Eddy's injury is not enough to render the exclusion inapplicable to her claims. The holding in *Eurick* controls and defeats the loss–of–consortium claims of Mrs. Darcy Eddy as a matter of law. There is no coverage under the USF&G policy. Summary judgment in favor of the insurer, USF&G, is proper.

Daniel Eddy's exclusive use of the AT&T vehicle was a regular use within the meaning of the "other vehicle" exclusionary clause. His claim fails. Similarly, Darcy Eddy's loss–of–consortium claim fails because, consistent with the holding in *Eurick,* a reasonable person could not conclude other than that the exclusion applied to *all* claims arising from the regular use of an "other vehicle." The case is remanded for dismissal on summary judgment of both claims of the petitioners.

We affirm the decision of the Court of Appeals on the claim of Petitioner Daniel Eddy and reverse its decision on the claim of Petitioner Darcy Eddy.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, PEARSON, ANDERSEN, and DURHAM, JJ., concur.