[No. 19169–1–I.   Division One.   July 23, 1990.]

STEPHEN GADDIS, *Respondent*, v. SAFECO INSURANCE COMPANY, *Appellant*.

*Gary W. House,* for appellant.

*Fiore J. Pignataro,* for respondent.

BAKER, J.—This case is on remand from the Washington State Supreme Court, following its decision in *Safeco Ins. Co. v. Barcom,* 112 Wn.2d 575, 773 P.2d 56 (1989). Two issues remain for resolution: (1) whether the trial court erred in finding that a Safeco Insurance Company (Safeco) policy held by Stephen Gaddis, the former husband of the decedent, provides coverage under its uninsured motorist provision for the loss of consortium damages suffered by his two insured minor daughters from the death of their mother, who was not insured under the policy; and (2) if coverage is available, what the policy limits are for each child.

I

The facts pertaining to this appeal have been set forth in *Safeco Ins. Co. v. Barcom, supra.* We quote the relevant portions here:

Barbara Bell Bowers was struck and killed by an uninsured motorcyclist on July 8, 1980. Bowers was the mother of two children, whose ages at that time were 10 and 8, and whose legal custodian was Bowers' former husband, Stephen Gaddis. At the time of the accident, Gaddis was insured under a Safeco automobile liability insurance policy providing UIM coverage on each of Gaddis's two automobiles. While Bowers was not a named insured under Gaddis's policy, their two children resided with Gaddis.

*Safeco Ins. Co. v. Barcom,* 112 Wn.2d at 578. Gaddis filed an uninsured motorist claim under his policy on behalf of the two children. The policy provides that Safeco will

pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person and caused by accident.

The policy covered two cars and provided uninsured motorist coverage of $100,000 per person and $300,000 per accident. It is not disputed that stacking was available at the time, which would result in limits of $200,000 per person and $600,000 per accident.

The trial court entered a judgment in Gaddis' favor in the amount of $175,000 for each child for a total of $350,000, confirming an arbitration award for that amount or the policy limits, whichever was less.[1]

## II

Safeco contends that the policy does not provide coverage to the Gaddis daughters since neither Safeco nor Gaddis contemplated at the time of entering into the insurance contract that it would provide coverage for the losses he now claims on their behalf. Gaddis responds that if the contract does not provide such coverage, it is a void attempt to provide less coverage than that required by a former version of the uninsured motorist statute, RCW 48.22.030.

---

[1]We do not imply by this recital of the facts that the trial court's award of $350,000 was within the appropriate policy limits, an issue we do not reach.

The particular policy provision at issue here is the limitation on the scope of the uninsured motorist clause coverage to damages *"because of bodily injury sustained by a covered person"*.

An insurance contract is to be read as the average insurance purchaser would read it, giving it a practical and reasonable interpretation, rather than a strained or forced one that would lead to absurd results. *Eurick v. Pemco Ins. Co.,* 108 Wn.2d 338, 341, 738 P.2d 251 (1987); *Farmers Ins. Co. v. Clure,* 41 Wn. App. 212, 216–17, 702 P.2d 1247 (1985).[2]

It is conceded here that the individual sustaining bodily injury in this case, Barbara Bowers, was not a "covered person". Moreover, the language of the insurance contract was clear and unambiguous. No serious argument can be made that these contracting parties believed, or that any average person would believe, that uninsured motorist coverage would be triggered by injury to or death of an uninsured, nonresident former spouse. The precise issue, then, is whether this provision violates the public policy considerations underlying RCW 48.22.030.

The version of RCW 48.22.030 in effect at the time of this accident mandated uninsured motorist's coverage in every automobile liability policy unless such coverage was rejected by the insured. The statute provided that all automobile liability policies shall offer coverage

for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . because of bodily injury, sickness or disease, including death, resulting therefrom[.]

Laws of 1967, ch. 150, § 27. The Washington courts have developed a sizable body of law interpreting the public policy expressed by the Legislature in this statute. That public

---

[2]This contract–based analysis is consistent with *Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 707 P.2d 125 (1985), where the court stated: "Notwithstanding its tort–oriented appearance, uninsured and underinsured motorist coverages are most appropriately characterized as 2–party contractual relationships between the insurer and the insured." *Britton,* 104 Wn.2d at 529.

policy was well summarized in *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 522–23, 707 P.2d 125 (1985):

> We have previously held [the uninsured motorist statute] is to be liberally construed in order to provide broad protection against financially irresponsible motorists. *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 494 P.2d 479 (1972). The purpose of the statute is to allow an injured party to recover those damages which would have been received had the responsible party maintained liability insurance. *Touchette v. Northwestern Mut. Ins. Co., supra.*
>
> > The insurance carrier which issued the policy stands, therefore, in the shoes of the uninsured motorist to the extent of the carrier's policy limits.
>
> *State Farm Mut. Auto. Ins. Co. v. Bafus*, 77 Wn.2d 720, 724, 466 P.2d 159 (1970).
>
> . . . Where an insurance policy does not provide the protection mandated by [the uninsured motorist statute], the offending portion of the policy is void and unenforceable. *Touchette v. Northwestern Mut. Ins. Co., supra; Federated Am. Ins. Co. v. Raynes*, 88 Wn.2d 439, 563 P.2d 815 (1977); *Grange Ins. Ass'n v. Great Am. Ins. Co.*, 89 Wn.2d 710, 575 P.2d 235 (1978).
>
> The statute does not contemplate a piecemeal whittling away of liability for injuries caused by uninsured motorists. *First Nat'l Ins. Co. of America v. Devine*, 211 So. 2d 587, 589 (Fla. Dist. Ct. App. 1968); *Touchette v. Northwestern Mut. Ins. Co., supra.*

*Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d at 522–23 (quoting *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751–52, 600 P.2d 1272 (1979), *modified on other grounds in Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 724, 658 P.2d 1230 (1983)).[3]

A number of recent cases have considered the relationship of policy exclusions to RCW 48.22.030. Gaddis relies primarily on *Grange Ins. Ass'n v. Hubbard*, 35 Wn. App. 407, 667 P.2d 121, *review denied*, 100 Wn.2d 1023 (1983). There, the court held that the mother of a minor who had been killed while a passenger in a stolen vehicle had coverage for her loss of consortium claim under the uninsured motorist provision in her own policy. Although the son had

---

[3]Although the statute has been amended a number of times since its enactment, affecting the continuing validity of specific holdings of some of the cases cited above, the basic policy considerations stated have remained the same.

been knowingly riding in the stolen vehicle at the time of the accident, and was thus excluded from coverage according to the terms of the policy, the court held that "[a]ny provisions in the policy must yield to the public law. Since she has the right of action against someone whose negligence caused the death of her son, it makes no difference whether her son is insured under that policy or not." *Hubbard,* 35 Wn. App. at 413.

The viability of *Hubbard* is in serious doubt. In the year following that decision, the Supreme Court construed RCW 48.22.030 to allow an insurance policy exclusion of parents' claims based on a child's motorcycle injuries. *Sowa v. National Indem. Co.,* 102 Wn.2d 571, 577–80, 688 P.2d 865 (1984). In the more recent decisions of *Eurick v. Pemco Ins. Co.,* 108 Wn.2d 338, 738 P.2d 251 (1987) and *Eddy v. Fidelity & Guar. Ins. Underwriters, Inc.,* 113 Wn.2d 168, 776 P.2d 966 (1989), insureds made claims under their uninsured motorist clauses for loss of consortium due to the death or bodily injury of a noninsured person. As in *Hubbard,* the injured persons' claims were barred due to policy exclusions. *See Eddy,* 113 Wn.2d at 170 (exclusion due to operation of company vehicle made available for "regular use"); *Eurick,* 108 Wn.2d at 340 (exclusion pertaining to use of motorcycle by insured).

Both cases rest on a contract analysis, citing the principle that the court's duty is to determine and give effect to the intention of the parties at the time of contracting. *See Eddy,* 113 Wn.2d at 177; *Eurick,* 108 Wn.2d at 340–41. Following that analysis, the Supreme Court found in each case that a reasonable person would have believed that the relevant contract provisions excluded all claims arising from accidents involving excluded vehicles. *Eddy,* 113 Wn.2d at 177; *Eurick,* 108 Wn.2d at 342.

The exclusions upheld in *Eurick* and *Eddy* were determined by the court to be specifically authorized by the uninsured motorist statute. *See also MacKenzie v. Empire Ins. Cos.,* 113 Wn.2d 754, 782 P.2d 1063 (1989) (automobile liability endorsement in multi–peril policy is exempt from

UIM statute). However, specific statutory authorization is not a requirement for legal validity of an exclusion under UIM coverage. "As a private contractor, the insurer is ordinarily permitted to limit its liability unless inconsistent with public policy or some statutory provision." *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 210, 643 P.2d 441 (1982) (citing *Trinity Universal Ins. Co. v. Willrich,* 13 Wn.2d 263, 272, 124 P.2d 950, 142 A.L.R. 1 (1942)).

> An insurer is free to limit its risks by excluding coverage when the nature of its risk is altered by factors not contemplated by it in computing premiums[.]

*Wiscomb,* 97 Wn.2d at 209.

> Moreover, exclusions that have been held violative of public policy generally have been those manifesting no relation to any increased risk faced by the insurer, or when innocent victims have been denied coverage for no good reason.

*Eurick v. Pemco Ins. Co.,* 108 Wn.2d at 343–44 (citing *Wiscomb,* 97 Wn.2d at 208–09).

In *Lovato v. Liberty Mut. Fire Ins. Co.,* 109 Wn.2d 43, 742 P.2d 1242 (1987), the court upheld a territorial limitation on UIM coverage. The court distinguished *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972), because the limitation involved in *Lovato* was not more restrictive than that afforded by the policy's general liability coverage. *See Lovato,* 109 Wn.2d at 46–47. The court then referred to the increased risk to carriers in the absence of the limitation, and observed "that nothing in the UM/UIM statute, RCW 48.22.030, indicates a public policy contrary to this . . . limitation." *Lovato,* 109 Wn.2d at 47.

Similarly, in this case increased risks are or would be involved if a UM/UIM insurer were to be held liable for loss of consortium claims by insureds arising out of injuries or death of noninsureds. Here, the decedent upon whose death these claims are based was not an insured, nor did she have any connection with the subject insurance policy, the insured vehicles, or the household of respondent. Presumably, if such coverage were required by public policy, it would apply as well to an adult insured's claim for loss of

consortium by reason of the death of his or her nonresident parent.

We do not perceive that such broad coverage of losses arising from death or injury to noninsured persons was expected or intended by the average reasonable purchaser of insurance.[4] Moreover, we see nothing in the UM/UIM statute which indicates a policy contrary to the limitation contained in the Safeco policy.

We recognize that cases from other jurisdictions are in conflict on this issue. In *Sexton v. State Farm Mut. Auto. Ins. Co.*, 69 Ohio St. 2d 431, 433 N.E.2d 555 (1982), an insured father was held entitled to recover damages under his uninsured motorist coverage for the wrongful death of his minor child, in spite of the fact that the child was not an insured. The policy language and the uninsured motorist statute in question were substantively identical to those herein. The court held that the policy restriction permitting the insurer to avoid coverage where the bodily injuries were sustained by a noninsured thwarted the legislative intent and was void. *Sexton*, 433 N.E.2d at 559–60. The *Sexton* approach has been followed in two other jurisdictions in cases involving similar policy restrictions and similar statutes. *See Webster v. Valiant Ins. Co.*, 512 So. 2d 971, 973 (Fla. Dist. Ct. App. 1987); *Hinners v. Pekin Ins. Co.*, 431 N.W.2d 345, 347 (Iowa 1988).

On the other hand, in *Smith v. Royal Ins. Co. of Am.*, 186 Cal. App. 3d 239, 230 Cal. Rptr. 495 (1986), a child sought to recover loss of consortium damages for the wrongful death of her parent, who was not insured under the daughter's policy, just as in the instant case. Based on similar policy and statutory language, the court held that

[e]ven a liberal construction of the statute . . . does not mandate recovery on these facts, as respondent [insurance company] neither intended nor was required to provide coverage

---

[4]Indeed, we note that no formal notice of a possible claim under Gaddis' policy was given until the decision in *Grange Ins. Ass'n v. Hubbard*, 35 Wn. App. 407, 667 P.2d 121, *review denied*, 100 Wn.2d 1023 (1983) was announced.

for wrongful death when neither the decedent nor the car in which he was riding was insured by respondent.

*Smith,* at 243. Similar results, again based on similar policy restrictions and statutes, have been reached in other jurisdictions. *See Spurlock v. Prudential Ins. Co.,* 448 So. 2d 218 (La. Ct. App. 1984); *Lafleur v. Fidelity & Cas. Co.,* 385 So. 2d 1241 (La. Ct. App.), *review denied,* 392 So. 2d 684 (La. 1980); *see also Bakken v. State Farm Mut. Auto. Ins. Co.,* 139 Ariz. 296, 678 P.2d 481 (Ct. App. 1983) (in which the deceased was an insured, but the court adopted a similar theory by illustration in responding to plaintiff–appellees' argument). We conclude that our Supreme Court has already indicated in *Eurick* and *Eddy* that our State should follow the latter approach. Thus, Safeco is not required to provide coverage for the claims of the Gaddis daughters.

In view of our holding, we need not address Safeco's further arguments pertaining to the availability of coverage,[5] nor do we reach the applicable policy limits issue.

Reversed.

SWANSON and SCHOLFIELD, JJ., concur.

Review denied at 115 Wn.2d 1029 (1990).

---

[5]We comment briefly on one point, however. Safeco asserts that at the time of the 1980 accident, Washington did not recognize the right of children to make a claim for loss of parental consortium. We disagree. The case Safeco relies on, *Ueland v. Pengo Hydra–Pull Corp.,* 103 Wn.2d 131, 691 P.2d 190 (1984), held that a child may bring an independent action for the loss of consortium of a parent tortiously *injured* by a third party. The right of action created was limited to causes arising on or after the date of the filing of the 1984 opinion. *Ueland,* 103 Wn.2d at 140–41. However, the holding is inapposite here, since this case involves a death, not an injury, and the right of action for wrongful death of a parent has been statutorily recognized in this state since at least 1917. *See Ueland,* 103 Wn.2d at 134; RCW 4.20.020; Laws of 1917, ch. 123, § 2.