[No. 16042-1-II.   Division Two.   January 25, 1994.]

ALLSTATE INSURANCE COMPANY, *Respondent,* v. MARK HAMMONDS, *Appellant.*

*David V. Johnson* and *Johnson & Rutz,* for appellant.

*David H. Armstrong* and *Armstrong & Cable,* for respondent.

SEINFELD, J. — Mark Hammonds claims coverage under the underinsured motorist provisions of an Allstate Insurance Company policy for the loss of consortium of his 10-year-old uninsured son. The claim arises out of injuries the boy sustained in an automobile accident. The trial court granted summary judgment of noncoverage to Allstate. Hammonds appeals. We affirm.

## FACTS

In January of 1988, Jacob Hammonds, Mark Hammonds's son, was a passenger in a car owned by his aunt. Jacob was seriously injured when his aunt's car collided with a vehicle driven by Thomas Ryan. Ryan, the driver at fault, was insolvent and had no liability insurance. At the time of the accident, Jacob's mother and Mark Hammonds were divorced. Pursuant to the divorce decree, Jacob resided with his mother and visited his father regularly.

Allstate had issued a policy to Hammonds's current wife, Elizabeth Hammonds, which included $50,000 of underinsured motorist (UIM) coverage. The policy provided that Allstate "will pay damages for bodily injury or property damage which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle." The policy included as insured persons the named insured and the named insured's resident spouse and resident relatives. The parties do not dispute that this language provides coverage for Mark Hammonds but excludes Jacob from coverage.

Hammonds filed a claim with Allstate to recover underinsured motorist benefits for his loss of consortium with Jacob, pursuant to RCW 4.24.010.[1] Allstate, asserting lack of cover-

---

[1] RCW 4.24.010 provides:

"The mother or father or both may maintain an action as plaintiff for the injury or death of a minor child . . ..

age under the policy, brought a declaratory judgment action in superior court. Both parties moved for summary judgment; the trial court granted Allstate's motion. The trial court concluded that no reasonable insurance purchaser would read the policy as providing the coverage Hammonds seeks, and that the insurance policy does not violate public policy.

ANALYSIS

Policy Coverage

Hammonds contends that the policy language covers his loss of consortium claim.[2] He argues that because he is an insured person under the policy, and because his claim is for damages that he is legally entitled to recover under RCW 4.24.010, he is entitled to underinsured motorist policy benefits. In its memorandum opinion the trial court stated that the policy only covers an *insured's* bodily injury damages, and that Hammonds's loss of consortium claim was not for an insured's bodily injuries. The trial court found the policy language unambiguous, stating that no reasonable person would believe that injury to an uninsured person would trigger UIM coverage.

■■ When a court examines a contract, it must read it "as the average person would read it; it should be given a 'practical and reasonable rather than a literal interpretation', and not a 'strained or forced construction' leading to absurd results." *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 341, 738 P.2d 251 (1987) (quoting *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)). A contract should not be given a construction

> which would lead to an extension or restriction of the policy beyond what is fairly within its terms, or which would lead to

---

". . . .

"In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship in such amount as, under all the circumstances of the case, may be just."

[2]The policy reads, "[w]e will pay damages for bodily injury or property damage which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle."

an absurd conclusion, or render the policy nonsensical or ineffective.

*Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 434-35, 545 P.2d 1193 (1976).

The trial court relied primarily on two cases in determining the coverage issue: *Eddy v. Fidelity & Guar. Ins. Underwriters, Inc.*, 113 Wn.2d 168, 776 P.2d 966 (1989) (insured sustained injuries while operating vehicle not insured under liability portion of policy); and *Eurick* (insured killed while riding as a passenger on a motorcycle; policy excluded recovery for injuries arising out of use of motorcycle). In both cases the insureds presented loss of consortium claims arising out of direct injuries to other insureds. In both cases the policies excluded coverage for the direct injuries to the other insureds. The Supreme Court held, in each case, that the policy exclusions barred the loss of consortium claims, concluding that a reasonable person would read the exclusions as a limitation on coverage for *all claims* arising out of the excluded conduct. *Eddy*, at 176; *Eurick*, at 342.

■ ■ Hammonds insists that *Eddy* and *Eurick* do not apply to his case because his policy contains no specific exclusion which would extend to his claim for loss of consortium. We are not persuaded. Hammonds's loss of consortium claim is necessarily dependent upon the injury to Jacob. Jacob, as a nonresident of Elizabeth Hammonds's household, failed to meet the conditions for coverage and thus was excluded from the list of "insured persons". The Allstate policy language that defines who is an "insured" operates in a similar fashion to the *Eddy* and *Eurick* exclusion clauses that explain when a person generally insured will not be insured.

Here, as in *Eddy* and *Eurick*, a reasonable person reading the policy clause would understand it to promise UIM benefits only when an insured sustains direct injuries. In its discussion of a reasonable person's interpretation of the relationship of the motorcycle exclusion clause to the parents' RCW 4.24.010 claims, the *Eurick* court observed:

We believe that the clear intent of the contract was to exclude from the set of risks that Pemco would insure against, and that respondents would pay premiums for, *all* claims arising from injuries sustained by a motorcycle driver or rider. Recognition of the parents' claims would render the exclusion virtually meaningless. The only damages a parent *cannot* recover under RCW 4.24.010 appear to be the child's personal pain and suffering. If the parents' claims were allowed, the insurer would pay the bulk of the damages it would have paid had the child brought its own action. To allow the exclusion to be circumvented merely by the substitution of one insured for another on the claim form would be to succumb to a "forced" or "strained" interpretation totally at odds with the interpretation the average person would give the policy.

*Eurick*, 108 Wn.2d at 342.

Furthermore, as the *Eddy* court remarked, it would:

afford the insurer only an illusory protection from risk if the exclusion did not reach *all* claims arising from injuries sustained by one "operating or occupying a motor vehicle owned by or available for the regular use by" the named insured when that vehicle was not insured under the liability coverage of the same policy.

*Eddy*, 113 Wn.2d at 176 (citing *Eurick*). This reasoning is applicable here also. If Allstate were required to compensate Hammonds for Jacob's uninsured injuries, the policy exclusion would provide Allstate with only an illusory protection from risk. Allowing Hammonds to circumvent the exclusion by substituting himself for his son would substantially eviscerate the exclusion. The trial court did not err in concluding that the Allstate policy does not provide the coverage Hammonds seeks.

### Ambiguity

Hammonds contends that even if the Allstate policy does not clearly provide coverage, the language at issue is ambiguous, and thus we must give it the reasonable interpretation most favorable to him. He asserts that it is unclear whether an insured must suffer bodily injury in order to receive UIM benefits or whether all that is required is that an insured be legally entitled to recover from an uninsured driver for bodily injuries suffered by a third party.

■ An ambiguity exists in a provision when, reading the contract as a whole, two reasonable and fair interpretations are possible. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 484, 687 P.2d 1139 (1984); *Morgan*, 86 Wn.2d at 435. "A clause in a policy is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 841, 734 P.2d 17 (1987). Where an ambiguity remains unresolved, we adopt the reasonable interpretation most favorable to the insured. *Vadheim*, at 841; *Morgan*, at 435. This rule applies even where the insurer may have intended another meaning. *Vadheim*, at 841; *Morgan*, at 435.

Hammonds urges us to adopt his favored interpretation. It would allow an insured person to recover UIM benefits under the Allstate policy whenever the person can point to a statute granting him a legal entitlement to damages stemming from injury to a relative, including loss of consortium of children and wrongful death of siblings and parents. We would have to engage in a strained and forced interpretation of the Allstate policy to conclude that it provides compensation to an insured household member for injuries to nonresident, uninsured relatives. As we discussed above, this is not a reasonable and fair interpretation, and it would "render the policy . . . ineffective." *Morgan*, 86 Wn.2d at 435. Thus, we decline to so construct the policy language.

### Public Policy

■ Hammonds contends that any interpretation of the Allstate policy which excludes his claim violates the public policy underlying the underinsured motorist statute, RCW 48.22-

---

[3]RCW 48.22.030 provides,

"(2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental

.030.[3] The courts have recognized that a "strong public policy of assuring protection to the innocent victims of automobile accidents" underlies the UIM statute. *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 207, 643 P.2d 441 (1982). To this end, we liberally construe the statute to allow persons injured by financially irresponsible motorists to recover from their insurers those damages which they would be entitled to recover from the responsible parties. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 522, 707 P.2d 125 (1985). "The insurance carrier which issued the policy stands, therefore, in the shoes of the uninsured motorist to the extent of the carrier's policy limits." *State Farm Mut. Auto. Ins. Co. v. Bafus*, 77 Wn.2d 720, 724, 466 P.2d 159 (1970).

■ Despite this public policy of broad protection for injured persons, Washington courts have avoided undue interference with the right to contract. "We shall not invoke public policy to override an otherwise proper contract even though its terms may be harsh and its necessity doubtful." *Emerson*, 102 Wn.2d at 483. Thus, public policy arguments are generally successful only if supported by specific legislation or judicial decisions.

> While questioning the wisdom of certain exclusion clauses, we have been hesitant to invoke public policy to limit or avoid express contract terms absent legislative action. "In general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy." 17 C.J.S. *Contracts* § 211, at 1024 (1963).

(Citation omitted.) *Emerson*, 102 Wn.2d at 481.

> Public *policy*, as a rule, is recognized by the courts of this state when the Legislature has acted, and not before. Therefore, the courts are not free, under the guise of statutory construction,

---

thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom, except while operating or occupying a motorcycle or motor-driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy."

to expand the requirements of law beyond those that the Legislature has seen fit to require.

*Sayan v. United Servs. Auto. Ass'n*, 43 Wn. App. 148, 159, 716 P.2d 895, *review denied*, 106 Wn.2d 1009 (1986).

■ The *Eurick* court also was confronted with public policy arguments. In determining that coverage exemptions for injuries sustained while riding a motorcycle do not violate the public policy of RCW 48.22.030, it stated: "the place the court initially looks to determine public policy is in statutes." *Eurick*, 108 Wn.2d at 343 (citing *Britton*, at 528-29). The court went on:

> Moreover, exclusions that have been held violative of public policy generally have been those manifesting no relation to any increased risk faced by the insurer, or when innocent victims have been denied coverage for no good reason. . . . Where the insurer faces an increased risk . . . exclusions have been upheld.

*Eurick*, 108 Wn.2d at 343-44 (citing *Wiscomb*, at 208-09; *Greer v. Northwestern Nat'l Ins. Co.*, 36 Wn. App. 330, 340-41, 674 P.2d 1257 (1984)).

The Supreme Court used the *Eurick* analysis of public policy arguments to determine the validity of territorial restrictions on UIM coverage. *Lovato v. Liberty Mut. Fire Ins. Co.*, 109 Wn.2d 43, 47, 742 P.2d 1242 (1987). In approving the coverage restriction, the *Lovato* court found determinative the facts that (1) nothing in RCW 48.22.030 indicates a public policy contrary to territorial limitation, and (2) offering insurance in foreign countries imposes an increased risk upon insurers.

In this case, as in *Eurick* and *Lovato*, neither the language of RCW 48.22.030 nor court decisions prohibits the coverage limitation contained in the Allstate policy.[4] The denial of Hammonds's loss of consortium claim does not

---

[4] *But see Grange Ins. Ass'n v. Hubbard*, 35 Wn. App. 407, 667 P.2d 121, *review denied*, 100 Wn.2d 1023 (1983), in which an insured mother claimed UIM benefits for the loss of consortium of her minor son who died in an automobile accident. The boy, generally an "insured" under the policy, was excluded from coverage because he was knowingly riding in a stolen vehicle.

frustrate the statutory goal of ensuring full recovery for an insured's bodily injury. Furthermore, this is not a situation in which the exclusion bears no relation to risk; on the contrary, Allstate would face a greatly increased risk if Hammonds's interpretation prevailed, a risk not factored into the cost of the policy premium. "An insurer is free to limit its risks by excluding coverage when the nature of its risk is altered by factors not contemplated by it in computing premiums". *Wiscomb*, 97 Wn.2d at 209. Nor is this a situation in which an innocent victim is denied coverage for no good reason. Here valid justification exists for a refusal of coverage.

We affirm.

MORGAN, C.J., and ALEXANDER, J., concur.

Review denied at 124 Wn.2d 1010 (1994).

---

Division Three held that the mother's independent right of action against the negligent driver entitled her to UIM benefits. The court relied upon the oft-quoted language from *Bafus* regarding the legislative intention that UIM coverage provide broad protection. The *Hubbard* court also relied upon its prior decision, *Brummett v. Grange Ins. Ass'n*, 4 Wn. App. 979, 485 P.2d 88 (1971) (insured parents claimed and won UIM benefits for loss of consortium after a negligent driver caused the death of their insured minor daughters). The *Hubbard* court did not discuss competing public policy concerns.

We reject Division Three's approach and instead concur with the public policy analysis adopted by Division One in *Gaddis v. Safeco Ins. Co. of Am.*, 58 Wn. App. 537, 794 P.2d 533, *review denied*, 115 Wn.2d 1029 (1990). The *Gaddis* court, relying on *Eurick* and *Eddy*, held that the insured minor daughters of an uninsured woman killed by an uninsured motorcyclist could not collect loss of consortium damages from their UIM insurer. The girls' policy limited the scope of its UIM coverage to damages "which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person". *Gaddis*, at 539. In determining that public policy did not forbid this result, the *Gaddis* court observed that if recovery were allowed for that claim, then payment would have to be made on claims arising from injury to other noninsured, nonresident, immediate relatives. *Gaddis*, at 543-44.