## A03A2222. ATLANTA CASUALTY COMPANY v. GORDON et al.
### (598 SE2d 70)

ANDREWS, Presiding Judge.

We granted Atlanta Casualty Company's application for interlocutory appeal of the trial court's denial of its motion for summary judgment on this claim by a parent under his uninsured motorist's policy for the wrongful death of his son. Because Georgia's uninsured motorist statute does not require an insurance company to pay damages for the death of a person not insured under its policy, we reverse.

James Michael O'Neal, Jr., a minor, was struck and killed by an uninsured motorist. O'Neal, Jr.'s parents were separated at the time and he lived with his mother. The parents sued the car's owner and driver for wrongful death, and the mother sued as administrator of her son's estate for pain, suffering, and medical expenses.

Atlanta Casualty was served with the parents' suit in its capacity as the father's uninsured motorist carrier. It subsequently moved for summary judgment in the wrongful death case, contending the son's death was not covered under the terms of his father's policy.

The Atlanta Casualty policy at issue provides that the company "will pay damages, which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury or property damage *sustained by a covered person* and caused by an accident. . . ." (Emphasis supplied.) It is undisputed that O'Neal, Jr. was not a covered person under his father's policy. The policy defines "covered person" as "you [the named insured] or any family member," and further defines "family member" as "a person related to you . . . who is a resident of your household." Under the policy definitions, therefore, O'Neal, Jr. was not a "covered person" under the contract because he did not live with his father.

The trial court denied Atlanta Casualty's motion, holding that the policy's definition of "covered person" was inconsistent with the coverage requirements of OCGA § 33-7-11 (a) (1), Georgia's uninsured motorist statute. This Code section provides that no automobile liability policy or motor vehicle liability policy shall be issued in this State to the car owner "unless it contains an endorsement or provisions undertaking to pay the insured all sums which said insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle. . . ." OCGA § 33-7-11 (a) (1).

Although the language in the statute appears clear on its face, we do not believe the legislature enacted OCGA § 33-7-11 (a) (1) with the intention of requiring insurance companies to pay damages for the death of a person not insured under the policy in question. "Statutes must be construed as well so as to square with common sense and sound reasoning. It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." (Citations and punctuation omitted.) *City of Brunswick v. Atlanta Journal & Constitution*, 214 Ga. App. 150, 153 (447 SE2d 41) (1994). Moreover, in construing the statute so as to give effect to the legislative intent, a mere segment of the statute should not be lifted out of context and construed without consideration of all the other parts of the statute. *City of Jesup v. Bennett*, 226 Ga. 606, 609 (176 SE2d 81) (1970).

In construing this Code section, we are mindful of the following description of the legislative intent behind the Uninsured Motorist Act: "The purpose of uninsured motorist legislation is to require some provision for first-party insurance coverage 'to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers.' " *Smith v. Commercial Union Assur. Co.*, 246 Ga. 50, 51 (268 SE2d 632) (1980). In the instant case, O'Neal, Sr. did not suffer any injuries nor is he the victim the Act was designed to protect. Therefore, there is nothing in the above statement of the statute's purpose which would support an interpretation that the legislature intended to compensate insureds for consequential damages arising from the death of a third party.

Moreover, "[a] suit for wrongful death by the representative of the estate or by the next of kin authorized to bring suit is derivative to the decedent's right of action." *Smith v. Rowell*, 176 Ga. App. 100 (335 SE2d 461) (1985). See *Jones v. Swett*, 244 Ga. 715 (261 SE2d 610) (1979). Had O'Neal, Jr. been injured, there would have been no right of recovery under his father's policy. There is no reason to reach a different result because the injuries were fatal.

Accordingly, there is no authority for interpreting OCGA § 33-7-11 (a) (1) in such a way as to invalidate the right of an insurer to "fix the terms of its polic[ies] as it wishes, insuring against certain risks and excluding others." *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (470 SE2d 659) (1996). "Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage." *Jefferson Pilot Life Ins. Co. v. Clark*, 202 Ga. App. 385, 388 (414 SE2d 521) (1991).

In looking at other state's case law on this issue, Ohio, Maryland, Iowa, and Nebraska adopted the position advocated by the dissent. See *Sexton v. State Farm Mut. Auto. Ins. Co.*, 69 Ohio St. 2d 431 (433 NE2d 555) (1982); *Hinners v. Pekin Ins. Co.*, 431 NW2d 345 (Iowa 1988); *State Farm Mut. Auto. Ins. Co. v. Selders*, 187 Neb. 342 (190 NW2d 789) (1971); *Forbes v. Harleysville Mut. Ins. Co.*, 322 Md. 689 (589 A2d 944) (1991). But, in Ohio, the legislature amended the UIM statute to specifically overrule *Sexton* and permit a policy exclusion limiting coverage only to bodily injury suffered by an insured. See *Beagle v. Walden*, 78 Ohio St. 3d 59 (676 NE2d 506) (1997).

Likewise, *Forbes v. Harleysville Mut. Ins. Co.* is no longer the law in Maryland. The General Assembly enacted Section 19-509 (c) (2) to apply to, and require UIM coverage for, a wrongful death claim where the deceased is an "insured." See *Nickolson v. Nationwide Mut. Ins. Co.*, 2001 WL 985099 (Del. Super., 2001). Accordingly, only two remaining states have adopted the position advocated by the dissent.

By contrast, Oklahoma, Illinois, Colorado, Missouri, Delaware, Wisconsin, Alaska, Florida, Indiana, Mississippi, Washington, California, Arizona, Louisiana, and Rhode Island have taken the opposite position and have uniformly interpreted their respective statutes as providing coverage only for injuries to those insured under the policy. See, e.g., *London v. Farmers Ins. Co.*, 63 P3d 552 (Okla. Civ. App. Div. 3, 2002); *State Farm Mut. Auto. Ins. Co. v. George*, 326 Ill. App. 3d 1065 (762 NE2d 1163) (2002); *Farmers Ins. Exchange v. Chacon*, 939 P2d 517 (Colo. App. 1997); *Livingston v. Omaha Property & Cas. Ins. Co.*, 927 SW2d 444 (Mo. App. W.D. 1996); *Temple v. Travelers Indem. Co.*, 2000 WL 33113814 (Del. Super. 2000); *Ledman v. State Farm Mut. Auto. Ins. Co.*, 230 Wis. 2d 56 (Wis. App. 1999);[1] *State Farm Mut. Ins. Co. v. Wainscott*, 439 FSupp. 840 (D. C. Alaska 1977); *Valiant Ins. Co. v. Webster*, 567 S2d 408 (Fla. 1990) (disapproved on other grounds); *Ivey v. Mass. Bay Ins. Co.*, 569 NE2d 692 (Ind. App. 1st Dist. 1991); *Gillespie v. Southern Farm Bureau Cas. Ins. Co.*, 343 S2d 467 (Miss. 1977); *Delancey v. State Farm Mut. Auto. Ins. Co.*, 918 F2d 491 (5th Cir. 1990) (interpreting Mississippi law); *Allstate Ins. Co. v. Hammonds*, 72 Wash. App. 664 (865 P2d 560) (1994); *Smith v. Royal Ins. Co. &c.*, 186 Cal. App. 3d 239 (230 Cal. Rptr. 495) (1986); *Bakken v. State Farm Mut. Auto. Ins. Co.*, 139 Ariz. 296 (678 P2d 481) (Ariz. App.

---

[1] In *Ledman*, parents argued that they were entitled to recover under their uninsured motorist policy for the death of their 30-year-old daughter who lived in another state. The policy provision at issue tracked the language of the UIM statute, providing that State Farm must pay damages "for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." Id. at 314, n. 1. The court held that interpreting the policy provision in such a way as to allow recovery for injury to someone not insured under the policy "would lead to an absurd result." Id. at 313.

1983); *Bartning v. State Farm Fire & Cas.*, 164 Ariz. 370 (793 P2d 127) (Ariz. App. 1990); *Spurlock v. Prudential Ins. Co.*, 448 S2d 218 (La. App. 1984); *Lafleur v. Fidelity & Cas. Co. &c.*, 385 S2d 1241 (La. App. 1980); *Terilli v. Nationwide Mut. Ins. Co.*, 641 A2d 1321 (R.I. 1994).

In light of the above and for all of the reasons stated, we conclude that the policy language in this case and the language of the uninsured motorist statute do not allow the result reached by the trial court. It is contrary to Georgia law "and would lead to an unfair result where insured persons would be entitled to damages which were not factored into the cost of the policy premium." *Daley v. Allstate Ins. Co.*, 135 Wash. 2d 777 (958 P2d 990, 998) (1998).[2]

*Judgment reversed. Johnson, P. J., Blackburn, P. J., Adams and Mikell, JJ., concur. Eldridge and Barnes, JJ., dissent.*

BARNES, Judge, dissenting.

Because I believe the majority opinion represents the activist interpretation of an unambiguous statute, I must respectfully dissent.

The question in this case is, does the statute allow an insured to recover from his uninsured motorist carrier for the death of his son by an uninsured motorist? The plain language of the statute says yes. Under the language of his policy, however, the father could not recover from the uninsured motorist, because the policy specifies that the insured himself must suffer a bodily injury. The statute, on the other hand, does not require that an insured himself suffer a bodily injury before he can recover from an uninsured motorist. It provides that uninsured motorist insurance must "pay the insured *all sums* which said insured *shall be legally entitled to recover as damages* from the owner or operator of an uninsured motor vehicle. . . ." (Emphasis supplied.) OCGA § 33-7-11 (a) (1).

Pretermitting for the moment what the legislature intended when it passed a law requiring insurance companies to offer insurance against damages caused by uninsured motorists, our job as members of the judiciary does not start by deciding what we think the legislature means. "Surely it is no sufficient reason for departing from established rules of construction, that a court may believe the legislature ought to have legislated differently from what it seems to

---

[2] Although the issue in *Daley* is whether the insured may recover from his UIM carrier for emotional distress, the Washington Supreme Court engaged in an extensive discussion of our issue in response to an amicus brief from the trial lawyers arguing that "as long as the insured has a cause of action in tort against the underinsured motorist he or she would be able to receive damages as long as some person suffered bodily injury." Id. at 997. The Court rejected this argument. Id.

have done." *Smith, Barry & Co. v. Davis Brothers*, 85 Ga. 625, 629 (11 SE 1024) (1890). Instead, our task is to begin by looking at the statute itself.

The Supreme Court of Georgia has summarized the guidelines for statutory interpretation:

> In construing a statute, our goal is to determine its legislative purpose. In this regard, a court must first focus on the statute's text. In order to discern the meaning of the words of a statute, the reader must look at the context in which the statute was written, remembering at all times that the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes. If the words of a statute, however, are plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results, then this Court is bound to follow the meaning of those words. If, on the other hand, the words of the statute are ambiguous, then this Court must construe the statute, keeping in mind the purpose of the statute and "the old law, the evil, and the remedy." OCGA § 1-3-1 (a).

(Citations and punctuation omitted.) *Busch v. State*, 271 Ga. 591, 592 (523 SE2d 21) (1999).

As the majority notes, the language in this case *is* clear on its face. The majority then, through some sort of judicial clairvoyance, engrafts what it believes the legislature must have intended. This approach, of course, assumes that the legislature was incapable of understanding the meaning of "all,"[3] and that the General Assembly did not want insureds to be able to recover for *all* damages caused by uninsured motorists, but only for certain damages that the majority proceeds to define.

The first step in judicial construction of a statute, however, is not to skip a step and go straight to interpretation, but to first examine the language of OCGA § 33-7-11 (a) (1) and determine whether it is susceptible to interpretation.

> Where a statute is susceptible of one and only one construction, this court can not adopt a different construction merely to relieve [the] parties of some real or imagined hardship; but

---

[3] "All," however, is one of those rare words that, although having many definitions, only has one meaning: "Being or representing the entire or total number, amount, or quantity; Constituting, being, or representing the total extent or the whole; Being the utmost possible of; Every; Any whatsoever." The American Heritage Dictionary of the English Language (4th ed. 2000).

> if the law is valid, we can only apply it in the form into which it was finally adopted as a statute by the lawmaking body.

(Citation and punctuation omitted.) *State Revenue Comm. v. Nat. Biscuit Co.*, 179 Ga. 90, 100 (175 SE 368) (1934).

The majority agrees with Atlanta Casualty's assertion that OCGA § 33-7-11 (a) (1) does not require coverage for damages resulting from injuries to a noncovered person by an uninsured motorist. Even though this proposed construction is contrary to the plain language of the statute, which requires that UM carriers "pay the insured all sums which said insured *shall be legally entitled to recover as damages* from the owner or operator of an uninsured motor vehicle. . . ." (Emphasis supplied.) OCGA § 33-7-11 (a) (1). In effect, the majority has now amended the statute to add the following bracketed language to the Code provision: UM carriers must "pay the insured all sums which said insured shall be legally entitled to recover as damages from the owner or operator of an insured motor vehicle [for bodily injury or property damage to an insured or covered person]. . . ." Such judicial legislation is beyond the authority given us by the Constitution and statutes of this State.

No language in the statute can reasonably support the majority's proposed construction. A plain reading of the language clearly requires coverage, regardless of whether the person injured is a covered or noncovered person in the policy. All that the statute requires is that the insured person be "legally entitled to recover damages." A court cannot by construction "add to, take from, or vary the meaning of unambiguous words in the statute." *Brooks v. Brooks*, 185 Ga. 549, 554 (195 SE 869) (1938).

The majority conjectures that the legislature did not intend to require this coverage, but can point to no language or ambiguity in the statute supporting this construction of the legislative intent, and makes no reference to any legislative history or comment upon which it relies. Where there is no ambiguity, our job is simply to look at the words the legislature used, not to interpret what we think they must have meant. If the legislature disagrees with our construction, it is free to amend the statute to make its intent clear, as it has on other occasions. See *State v. Sneddon*, 235 Ga. App. 739 (510 SE2d 566) (1998), for example, in which we noted the legislature's amendment to the implied consent law after we held that the statute as written required an arresting officer to read the implied consent warnings verbatim. See also *Smith v. Smith*, 254 Ga. 450-451 (1) (330 SE2d 706) (1985), in which the Supreme Court reviewed certain legislative action taken in response to problems elucidated in previous opinions.

While it is true that this court has held that "[s]tatutes must be construed as well so as to square with common sense and sound

reasoning . . . and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature," the case in which we said that involved the construction of a statute with two apparently conflicting subsections, not the construction of an admittedly unambiguous statute. *City of Brunswick v. Atlanta Journal & Constitution*, 214 Ga. App. 150, 153 (3) (447 SE2d 41) (1994). Moreover, the consequence which the majority seeks to avoid is deemed unreasonable or absurd only because four members of this court say so. The majority points to no authority demanding that conclusion.

Further, even if I were to accept the majority's premise that our duty is to look at the legislative intent despite the unambiguous language of the statute, I cannot agree that the legislature meant to require coverage only for bodily injuries incurred by the insured, as opposed to damages incurred by the insured. Although we can examine no legislative history, our courts have previously considered the legislature's intent in enacting the Uninsured Motorist Act. The Supreme Court of Georgia concluded that "the Uninsured Motorist Act . . . resulted from public concern over increasingly frequent hardships imposed upon persons sustaining bodily and property damage caused by uninsured and financially irresponsible motorists, as shown by the reported cases on this subject." *State Farm Mut. Auto. Ins. Co. v. Murphy*, 226 Ga. 710, 712 (177 SE2d 257) (1970). Given the result today, the majority has apparently concluded that the public was only concerned about hardships imposed on covered persons sustaining bodily injuries.

Thus, even if there were some ambiguity in the statute, which there is not, we would be required to construe it broadly to require uninsured motorist insurance coverage for an innocent insured, who is legally entitled to recover wrongful death damages from an irresponsible insured driver, regardless of whether the decedent was "insured" under the policy.

As to foreign law on this issue, the cases are not particularly illustrative, as many of them interpret statutes that are worded differently from Georgia's. As the majority notes, the Ohio and Maryland legislatures amended their uninsured motorist statutes after court rulings on the subject, an action that the Georgia legislature is also capable of undertaking if it considers such action necessary.[4] Some states' uninsured motorist statutes, unlike Georgia's,

---

[4] After the Ohio Supreme Court issued the opinion in *Sexton*, the Ohio legislature amended the statute to provide that uninsured motorist coverage must provide benefits " 'for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.' " *Moore v. State Auto Mut. Ins.*

"require[ ] coverage for insured persons who are legally entitled to recover damages because of 'bodily injury, sickness or disease, including death.' " *London v. Farmers Ins. Co.*, 63 P3d 552, 556 (Okla. Ct. App. 2002). Courts in those states have determined that the statute is ambiguous and that the "bodily injury" must occur to the insured. See, e.g., *Farmers Ins. Exchange v. Chacon*, 939 P2d 517 (Colo. Ct. App. 1997); *Livingston v. Omaha Property & Cas. Ins. Co.*, 927 SW2d 444 (Mo. Ct. App. 1996); *Gaddis v. Safeco Ins. Co.*, 58 Wash. App. 537 (794 P2d 533) (1990); *Bartning v. State Farm Fire & Cas.*, 164 Ariz. 370 (793 P2d 127) (Ct. App. 1990). But the Georgia statute says nothing about "bodily injury," and thus it is not ambiguous or open to construction.

Because this court should not take an activist role by interpreting an unambiguous statute through judicial legislation, I respectfully dissent.

I am authorized to state that Judge Eldridge joins in this dissent.

DECIDED MARCH 30, 2004 — 

*Seacrest, Karesh, Tate & Bicknese, Karsten Bicknese, Peter Werdesheim*, for appellant.

*Harper, Waldon & Craig, Daniel C. Prout, Jr., Kam & Ebersbach, Randy J. Ebersbach*, for appellees.

---

*Co.*, 88 Ohio St. 3d 27, 30 (723 NE2d 97) (2000). The Ohio Supreme Court concluded that the statute was still ambiguous, and construing it with the statute's remedial purpose in mind, held that an insured could recover damages for the death of his daughter, who was not an insured under the policy. Id. at 32. The legislature amended the statute again, with specific reference to *Sexton* and *Moore*, Ohio Code § 3937.18.

Further, while a trial court in Delaware concluded in *Nickolson v. Nationwide Mut. Ins. Co.*, 2001 WL 985099 (Del. Super. 2001), that *Forbes* was no longer good law after the Maryland legislature amended its uninsured motorist statute, the Maryland courts have not so concluded. See, e.g., *W. American Ins. Co. v. Popa*, 352 Md. 455, 465, n. 2 (723 A2d 1) (1998); *Webster v. GEICO*, 130 Md. App. 59, 63 (744 A2d 578) (1999).